**INTERCONTINENTAL TRAVEL MARKETING, INC., Plaintiff– Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE COR- PORATION, as Receiver for Gateway National Bank, Defendant–Appellee.**

No. 92–16507.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1994.

Decided Dec. 28, 1994.

---

Jon Eric Hollmann, Hollmann & Wertheimer, San Diego, CA, for plaintiff-appellant.

Marc Kalish and Kenneth E. Moyer, Kalish, Forrester & Torres, Phoenix, AZ, Ann S. DuRoss, Asst. Gen. Council, Colleen B. Bombardier, Sr. Counsel, Claire L. McGuire, of counsel, Barbara S. Woodall (argued), F.D.I.C., for defendant-appellee.

Before: ALDISERT *, WIGGINS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

In this appeal, we address the effect of a claimant's failure to pursue administrative remedies before the expiration of the claims bar date specified in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). We have jurisdiction over this appeal under 28 U.S.C. § 1291. Because we find that the district court properly dismissed this case for lack of subject matter jurisdiction, we affirm.

## I. FACTS

On or about July 25, 1989, Intercontinental Travel Marketing ("ITM") and Gateway National Bank ("GNB") entered into a Merchant Bankcard Agreement. On January 9, 1990, ITM filed suit in the United States District Court for the District of Arizona against GNB and Southwestern States Bankcard Association ("SSBA"), alleging breach of the terms of the Agreement. (SSBA processed the credit transactions between ITM and GNB.) On February 15, 1990, after GNB had been placed in receivership, the Federal Deposit Insurance Corporation ("FDIC") assumed control of GNB. In an order dated March 8, 1990, ITM and the FDIC entered a stipulation substituting the FDIC as defendant in the lawsuit. In furtherance of its role as receiver, the FDIC executed a purchase and assumption transaction pursuant to authority granted by 12 U.S.C. § 1821(c)(2)(A)[1]. After receiving an extension of time, the FDIC filed its answer on June 27, 1990.

In accordance with § 1821(d)(3)(B)(i)[2], the FDIC published notices from February 28, 1990 through April 25, 1990 announcing the administrative claims bar date, May 29, 1990, but the FDIC did not mail notice of the bar date to ITM as required by § 1821(d)(3)(C).[3] However, there was no evidence that the FDIC intended to conceal the bar date from ITM. ITM did not file an administrative claim with the FDIC until March 11, 1992, after the FDIC filed its motion for summary judgment.

The FDIC moved for summary judgment on March 2, 1992, contending that the district court lacked jurisdiction over ITM's claims because ITM had failed to file a timely administrative claim pursuant to § 1821(d). ITM opposed the FDIC's motion, arguing that because the FDIC had failed to mail a notice of the claims bar date to ITM, required by § 1821(d)(3)(C), ITM's notice of receivership by the March 1990 stipulation notwithstanding, ITM did not need to ex-

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

1. Unless otherwise indicated, all statutory references herein are to FIRREA, codified at 12 U.S.C. § 1821.

2. Section 1821(d)(3)(B) provides in pertinent part that

The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution shall—
(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by date specified in the notice which shall be not less than 90 days after the publication of such notice....

ITM does not contend that the FDIC failed to follow the notice by publication requirements of this section.

3. Section 1821(d)(3)(C) provides that

The receiver shall mail notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—
(i) at the creditor's last address appearing in such books; or
(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

The FDIC concedes that it failed to mail notice of the bar date to ITM as required by this section.

haust FIRREA's administrative remedy requirement. The district court granted summary judgment in favor of the FDIC on June 30, 1992.

■ ITM filed a motion to reconsider on the grounds that it had submitted an administrative claim, although after the claims bar date. When the district court denied ITM's motion on August 4, 1992, ITM filed the present appeal.[4]

## II. DISCUSSION

### A. Standard of Review

■ We review a grant of summary judgment de novo. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992). We also review the existence of subject matter jurisdiction de novo. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 554 (9th Cir.1992).

### B. ITM's Failure to Exhaust FIRREA's Claims Process

■ Section 1821(d)(3)(A) of FIRREA provides the FDIC, acting in its capacity as receiver, with the authority to determine claims against a failed depository institution. If a claimant submits a timely claim to the FDIC, it must determine within 180 days whether to allow or disallow the claim.[5] If the FDIC fails to determine the claim or disallows the claim, then, under § 1821(d)(6)(A), the claimant has 60 days to request administrative review or file or continue suit on such claim in the district court.[6] No court has jurisdiction over the claim until the exhaustion of this administrative process.[7]

In *Henderson v. Bank of New England* we held that no jurisdiction exists if a claimant does not exhaust FIRREA's administrative process. 986 F.2d 319, 320–21 (9th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993). The claimant in *Henderson* filed his complaint against the bank in district court before exhausting his administrative remedies but after the FDIC was appointed as receiver for the bank. We held that the district court lacked subject matter jurisdiction because FIRREA "contains no provision granting federal jurisdiction to claims filed after a receiver is appointed but before administrative exhaustion" and "[s]ection 1821(d)(13)(D) strips all courts of jurisdiction over claims made outside the administrative procedures of section 1821." *Id.* at 320 (citing *Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 882 (5th Cir.1992)).

The present case differs from *Henderson* because the claimant in *Henderson* filed his action *after* the FDIC was appointed as receiver. Nonetheless, we see no reason, in § 1821(d) or any other source, why that hold-

4. The FDIC argued that we should dismiss ITM's appeal because ITM lacked the capacity to pursue its appeal, since its corporate powers were suspended for failure to pay taxes, pursuant to Cal.Rev. & Tax Code §§ 23301–02. We note that prior to oral argument, ITM submitted a certificate indicating that it had revived its corporate status. *See* Appendix A to Appellant's Supplemental Brief. Therefore, ITM could pursue its appeal, since the purpose of section 23301 is to collect taxes and the payment of back franchise taxes revives a corporation and allows that corporation to defend itself in an action. *See United States v. 2.61 Acres of Land, More or Less*, 791 F.2d 666, 668–69 (9th Cir.1985) (court may grant continuance to allow corporation to pay taxes and revive itself).

5. Section 1821(d)(5)(A)(i) provides that

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

6. Section 1821(d)(6)(A) provides the claimant, upon disallowance, with a 60–day period to "request administrative review of the claim ... or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States...."

7. Section 1821(d)(13)(D) provides that

Except as otherwise provided in this subsection, no court shall have jurisdiction over—
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

ing should not apply to cases in which the claimants filed their action *before* the FDIC was appointed as receiver, and we extend *Henderson's* holding accordingly. Because ITM failed to properly exhaust the statutorily mandated exhaustion requirements of § 1821(d), no jurisdiction exists over its action.

ITM argues that it should not have to exhaust under FIRREA because the word "continue" in § 1821(d)(5)(F)(ii) [8] means that claimants who file suit before the FDIC's appointment as receiver are exempt from FIRREA's exhaustion requirement. We disagree. We find that § 1821(d)(5)(F)(ii) merely means that filing a claim with the FDIC will not prejudice claimants who decide to continue an action in district court *after having complied with the administrative process.* This provision neither creates a separate scheme for cases pending at the time of the FDIC's appointment as receiver, nor allows claimants to pursue administrative and judicial remedies simultaneously. *See Carney v. Resolution Trust Corp.,* 19 F.3d 950, 955–56 (5th Cir.1994) ("allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA"); *Brady Dev. Co. v. Resolution Trust Corp.,* 14 F.3d 998, 1003 (4th Cir.1994) ("Congress clearly envisioned that administrative and judicial review of claims could not take place simultaneously.").

Our holding is in accord with decisions from other circuits.[9] For example, in *Bueford v. Resolution Trust Corp.,* 991 F.2d 481, 485 (8th Cir.1993), the Eighth Circuit rejected the claimant's allegation that applying the administrative requirements of FIRREA to a pending case was an improper retroactive application of the statute. Relying on § 1821(d)(6)(B)(ii), which provides for the final disallowance of cases if claimants fail to "continue an action commenced before the appointment of the receiver" within 60 days after the end of the FDIC's period of review, the court concluded that FIRREA applies to pending actions. Applying the exhaustion procedures, the court upheld the district court's dismissal of the claimant's action for lack of subject matter jurisdiction, since the claimant failed to file a claim with the FDIC. *Bueford,* 991 F.2d at 485; *see also Carney,* 19 F.3d at 955 ("FIRREA makes participation in the administrative claim review process mandatory, regardless of whether the claims were filed before or after the [FDIC] was appointed receiver of the failed institution."); *Brady Dev.,* 14 F.3d at 1004–05 (In an action involving a pre-receivership claim, the court stated that "[o]nly after the [FDIC] denies a claim or fails to act within 180 days after receiving the claim may judicial review be sought or a previously filed action continued.")[10]; *Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103,

---

**8.** Section 1821(d)(5)(F)(ii) provides that

> Subject to paragraph (12) [which allows the conservator or receiver to seek a stay of a judicial proceeding to which such institution "is or becomes" a party] the filing of a claim with the receiver shall not prejudice any right of the claimant to *continue* any action which was filed before the appointment of the receiver.

(emphasis added).

**9.** The legislative history also supports our holding that exhaustion of the administrative claims process is mandatory for pre-receivership cases. The House Report for FIRREA states that

> The agency's determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period. A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice. Any suit *(or motion to renew a suit filed prior to appointment of the receiver)*

> must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC.

H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 (1989) (emphasis added).

**10.** In *Brady Development,* the court specifically rejected the Tenth Circuit's reasoning in *Marc Dev., Inc. v. FDIC,* 771 F.Supp. 1163 (D.Utah 1991), *aff'd,* 992 F.2d 1503 (10th Cir.1993), *vacated,* 12 F.3d 948 (10th Cir.1993), which appeared to distinguish pre-receivership cases. Not only has this case, affirmed on appeal by the Tenth Circuit, been vacated, but it was decided before *Mustang Partners, infra,* which reached the opposite conclusion. In any event, like the Fourth Circuit, we see no provision in FIRREA which would excuse claimants with pre-receivership cases from complying with FIRREA's exhaustion process.

106 (10th Cir.1991) ("No interpretation [of FIRREA] is possible which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process.... Mustang's right to continue pursuing its pending lawsuit is dependent upon its compliance with FIRREA's claims provisions.").

■ We recognize that some courts, addressing the issue of jurisdiction over actions pending at the time of the FDIC's appointment as receiver, have stayed, not dismissed, the actions. We agree that a stay may be appropriate where the district court examines jurisdiction when the claimant still has time to file an administrative claim with the FDIC *before* the administrative bar date passes. Dismissal may not be appropriate in such a case because the claimant still can comply with FIRREA's exhaustion requirement. The district court technically does not lose jurisdiction over the case until the claimant fails to file a timely administrative claim. *See, e.g., Marquis v. FDIC,* 965 F.2d 1148, 1154–55 (1st Cir.1992) (observing that FIRREA's purpose, the efficient processing of claims against failed banks, "would be disserved by forcing the courts to dismiss all pending litigation, only to have the cases refiled when and if administrative settlement proved impracticable"); *Carney,* 19 F.3d at 955 (reversing district court's dismissal for lack of subject matter jurisdiction and approving of *Marquis'* language that a court should stay an action to permit exhaustion); *Coston v. Gold Coast Graphics,* 782 F.Supp. 1532, 1536 (S.D.Fla.1992) (deciding that a court should grant a stay until claimants comply with FIRREA when the case was pending before the FDIC's appointment as receiver). However, the present case is distinguishable because ITM's claims bar date has already passed.

We also recognize that the holdings in two recently decided Fifth Circuit cases contradict our holding here. In *Whatley v. Resolution Trust Corp.,* the Fifth Circuit held that, where a creditor files a claim before the debtor goes into receivership, the receiver may elect to remain in court or request a stay and institute administrative proceedings. If the receiver fails to act, it is deemed to

have chosen to remain in court. 32 F.3d 905, 910 (5th Cir.1994). In *Greater Slidell Auto Auction v. American Bank & Trust of Baton Rouge,* the panel majority held that, where the creditor's suit is pending at receivership and the receiver fails to give notice of the procedure for filing an administrative claim, the receiver must consider the pending suit an administrative claim. 32 F.3d 939, 941 (5th Cir.1994). This result prevents the exhaustion requirement from precluding the lawsuit.

■ Our reading of FIRREA indicates otherwise. We read the claims bar date to be a jurisdictional requirement. As the next section shows, we do not attach the same significance as the Fifth Circuit to the FDIC's failure to provide notice of the bar date: "This is particularly true in a case where, as here, the receiver properly published notice and Appellants received actual notice of the receivership by the FDIC's" stipulation agreement. *Id.,* 38 F.3d 180, 182 (5th Cir.1994) (Aldisert, J., dissenting). In these circumstances we choose to follow the persuasive reasoning expressed in *Brady, Bueford,* and *Mustang Partners,* and even in the Fifth Circuit in *Carney.* The district court properly found FIRREA's exhaustion requirement mandatory and dismissed ITM's case for lack of subject matter jurisdiction.

### C. FDIC's Failure to Mail Notice under § 1821(d)(3)(C)

■ ITM argues that the FDIC's failure to mail notice to ITM of the claims bar date as required by 12 U.S.C. § 1821(d)(3)(C), *see supra* note 3, tolls the barring of ITM's claim. We have never addressed the consequences of the FDIC's failure to mail notice of the bar date to a creditor of the institution.

■ We begin our inquiry by analyzing § 1821(d). Section 1821(d)(3)(C) states that the FDIC, as receiver, "shall mail a notice [for creditors to present their claims] to any creditor shown on the institution's books ... within 30 days after the discovery [of the creditor's] name and address." While this section seems to make the mailing requirement imperative for the FDIC, the statute imposes no consequence on the FDIC for

failure to do so. *See Meliezer,* 952 F.2d at 883.

We compare the legal consequence of ITM's situation to the consequence if the FDIC had failed to comply with § 1821(d)(5)(C). The FDIC notified ITM of its appointment as GDB's receiver by virtue of its March 8, 1990 stipulation with ITM. If the FDIC had failed to do so, § 1821(d)(5)(C) would have exempted ITM from filing an administrative claim within the bar date.[11] FIRREA expressly gives relief from the bar date to claimants who do not receive notice of receivership but does not provide the same relief to claimants who do not receive notice of the administrative claims bar date. We think the express remedy in § 1821(d)(5)(C) for lack of notice of receivership and the lack of express consequence in § 1821(d)(3)(C) precludes ITM's argument. *See Navistar Int'l Transp. Corp. v. United States Envtl. Protection Agency,* 858 F.2d 282, 286 (6th Cir.1988) (In a statute with mandatory language but no consequence for failure to comply, "the failure of the [EPA's] notice of noncompliance to contain the instruction manual or the technical support document does not prevent the EPA from proceeding with the liability hearing."), *cert. denied,* 490 U.S. 1039, 109 S.Ct. 1943, 104 L.Ed.2d 413 (1989).

The Supreme Court's decision in *Brock v. Pierce County* supports our conclusion. 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986). In *Brock,* the Court found that a statute in which Congress used mandatory language, but declined to specify a consequence for failure to comply, did not preclude subsequent agency action. *Id.* at 260, 106 S.Ct. at 1839. The Court articulated the " 'great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.' " *Id.* (quoting *United States v. Nashville, C. & St. L. Ry. Co.,* 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81 (1886)).

While the FDIC concedes that it failed to mail notice to ITM, the record indicates its failure was merely negligent. Such negligence does not justify preventing the FDIC from further action. *See id.* This conclusion is even more compelling because FIRREA's exhaustion scheme serves an important purpose—allowing the FDIC "to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 396 (3d Cir.1991), *cert. denied,* 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *see Brock,* 476 U.S. at 260, 106 S.Ct. at 1839.

There is nothing in the record suggesting that the FDIC engaged in affirmative misconduct by failing to mail notice to ITM or that it intentionally disregarded the mail notice requirement. While in some cases affirmative misconduct or intentional disregard of the mail notice requirement by the FDIC could toll the bar date, we do not have such a case before us here. We find that the FDIC's negligence in this case is not enough to excuse ITM from failing to exhaust its administrative remedies under FIRREA.

We acknowledge that the Fifth Circuit's holding in *Whatley* criticizes the result we reach here because the result creates an opportunity for the FDIC to "lie[ ] in ambush, awaiting expiration of the administrative deadline so that it may dispose of the claim without consideration of its merits." 32 F.3d at 910. This objection need not concern us here because the notice of receivership to ITM greatly diminished the possibility that the FDIC was "laying in ambush," and because on the record the worst that may be said of the FDIC is that it was negligent, not that it intended to "ambush" ITM. Our clear reading of § 1821(d) and the principles articulated in *Brock* satisfy us, as they satisfied the Fifth Circuit in *Meliezer,* 952 F.2d at 882–83, that the FDIC's failure

---

11. Section 1821(d)(5)(C)(i) provides for the final disallowance of claims filed after the claims bar date stated in the notice *published* by the FDIC. Section 1821(d)(5)(C)(ii) provides an exception to this general rule of disallowance if

(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and

(II) such claim is filed in time to permit payment of such claim.

to mail notice of the bar date did not excuse ITM from exhausting its administrative claims. The district court properly declined to toll the claims bar date and dismissed ITM's claim.

### D. Estoppel

ITM argues that the FDIC is estopped from asserting the bar date in defense because it did not file its motion for summary judgment on this issue until March 2, 1992, nearly two years after the May 29, 1990 bar date had passed. However, filing an administrative claim before the bar date was a jurisdictional requirement for ITM. Estoppel may not prevent an objection to subject matter jurisdiction, because such an objection to subject matter jurisdiction may be raised at any time, by any party or the court. *See Brady Dev.*, 14 F.3d at 1007 (finding that the RTC by accepting an amended complaint did not vest the district court with jurisdiction, since "[t]he doctrines of waiver and estoppel do not apply to subject matter jurisdiction determinations"); *Bueford*, 991 F.2d at 485 ("the [FDIC] cannot, by its own conduct or otherwise, be estopped from raising the issue of subject matter jurisdiction"); *Feise v. Resolution Trust Corp.*, 815 F.Supp. 344, 345 (C.D.Cal. 1993) (subject matter jurisdiction cannot be waived) (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983)); *Glenborough N.M. Assoc. v. Resolution Trust Corp.*, 802 F.Supp. 387, 393 n. 3 (D.N.M.1992) ("doctrines of waiver and estoppel do not apply to subject matter jurisdictional requirements and lack of subject matter jurisdiction can be raised any time, even by the court") (citations omitted).

### E. ITM's Due Process Claim

Last, ITM contends that, even though the FDIC put it on actual notice of its receivership appointment and thereby on inquiry notice of the claims bar date, the FDIC still violated its due process rights by failing to provide it with actual notice of the claims bar date. ITM raised this argument in its motion to reconsider the order granting summary judgment, but not in its response to the FDIC's original motion for summary judgment. Raising an issue for the first time in a motion to reconsider is not considered adequate preservation of the issue at a summary judgment stage. *See Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1017 (8th Cir.1988). We decline to consider ITM's due process argument because ITM, the party raising an issue in opposition to a summary judgment motion, failed to meet its burden to preserve the issue adequately for the court of appeals. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir.1990).

### III. CONCLUSION

We hold that compliance with FIRREA's exhaustion requirement is mandatory for both pre- and post-receivership cases. ITM knew of the FDIC's appointment as receiver, but failed to exhaust the administrative claims process by filing a claim before the expiration of the bar date. We agree with the district court that it lacked subject matter jurisdiction over ITM's claims. The FDIC's negligent failure to mail notice to ITM of the claims bar date neither conferred jurisdiction upon the court nor tolled the claims bar date.

AFFIRMED.