PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

ELMCO PROPERTIES, INCORPORATED,
Plaintiff-Appellant,

v.

SECOND NATIONAL FEDERAL SAVINGS
ASSOCIATION; RESOLUTION TRUST
CORPORATION, as Receiver of and
Conservator of Second National

Federal Savings Bank, also known
as Second National Federal Savings
Association; RESOLUTION TRUST
CORPORATION, as Receiver of Second
National Federal Savings
Association,
Defendants-Appellees.

No. 95-3172

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
M. J. Garbis, District Judge.
(CA-95-1497-MJG)

Argued: July 17, 1996

Decided: September 3, 1996

Before MURNAGHAN, Circuit Judge, and BUTZNER and
PHILLIPS, Senior Circuit Judges.

_____

Reversed by published opinion. Senior Judge Phillips wrote the opin-
ion, in which Judge Murnaghan and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** George Frederick Obrecht, III, OBRECHT &
OBRECHT, Severna Park, Maryland, for Appellant. Kathryn Ryan
Norcross, FEDERAL DEPOSIT INSURANCE CORPORATION,
Washington, D.C., for Appellees. **ON BRIEF:** Ann S. DuRoss,
Assistant General Counsel, Richard J. Osterman, Jr., Senior Counsel,
FEDERAL DEPOSIT INSURANCE CORPORATION, Washington,
D.C.; Marcell Solomon, SOLOMON & GREEN, P.C., Greenbelt,
Maryland, for Appellees.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Appellant Elmco Properties, Inc. sued Appellees Second National
Federal Savings Association (FSA) and the Resolution Trust Corpora-
tion (RTC)--acting in various capacities--seeking declaratory judg-
ment that the RTC had misapplied certain of Elmco's funds to
discharge an outstanding loan. Elmco further sought repayment of
those funds. The RTC and FSA moved to dismiss, claiming that
Elmco's failure to first present its claim to the RTC for resolution, as
is required by the Financial Institutions Reform, Recovery and
Enforcement Act of 1989 (FIRREA) (codified as amended in 12
U.S.C.), divested the district court of jurisdiction. Elmco responded,
claiming that because it never received sufficient notice of the RTC's
administrative claims process, extinguishing its claim without first
allowing it an opportunity to present the claim to the RTC would vio-
late due process. The district court agreed with the RTC and FSA and
dismissed Elmco's claim. Finding that Elmco was denied sufficient
notice of its opportunity to present its claim, hence was denied due
process, we reverse.

I.

In 1986, Elmco executed a guaranty in favor of Second National
Federal Savings Bank (FSB) securing the obligations of Joan and E.
Lee Meadows, Elmco's principal shareholders, under a $500,000 line

2

of credit. This guaranty was further secured by an Indemnity Deed of Trust on real property Elmco owned.

In 1988, FSB made two loans to Elmco totalling $1,625,196. These loans were guarantied by the Meadows and were secured by Elmco's real property. Later, Elmco established at FSB an escrow account, into which Elmco transferred its rights under certain letters of credit; this account further collateralized Elmco's obligations. In 1990, Elmco and FSB entered into a "letter agreement" regarding these two loans, but the terms of that agreement are not in the record.

In 1992, Elmco defaulted on the 1988 loans and the Meadows defaulted on their line of credit; Elmco and the Meadows also refused to honor their respective guaranties. Later that year, FSB failed and the Office of Thrift Supervision (OTS) appointed the RTC as FSB's receiver. It also chartered a new institution, FSA, which acquired substantially all of FSB's assets and liabilities, including the 1988 loans to Elmco and Elmco's escrow account. OTS also appointed the RTC as FSA's conservator.

In June of 1993, Elmco and the Meadows entered into a settlement agreement with FSA and with the RTC in its capacity as FSA's conservator. Under this agreement, Elmco and the Meadows confirmed their defaults on the two loans and the line of credit, agreed to a workout of the amounts owed under those loans, and agreed to allow FSA to foreclose on some of Elmco's real property. The agreement also set up certain conditions that, if fulfilled by Elmco and the Meadows, would release those parties from their liabilities under the loans and guaranties. One of those conditions was that "No event of Bankruptcy or Avoidance Action shall have occurred." JA 21.

In November of 1993, Lee Meadows filed for bankruptcy. Three months later, FSA notified Elmco that the escrow account had been closed and the $132,762.29 in the account had been"applied to principal on [Elmco's] non-performing loan[s]." JA 28. Elmco later wrote to request a refund of that money.

By September of 1994, FSA had failed and the RTC was changed from its conservator to its receiver. In October, November, and December, the RTC published notices in the Baltimore Sun and

3

Washington Post announcing the receivership and explaining that all creditors should submit proof of their claims against FSA to the RTC by January 28, 1995.

Shortly after becoming FSA's receiver, the RTC also wrote to Elmco and denied its request to return the funds. It explained that it considered Meadows's filing for bankruptcy a default under the settlement agreement, and that, it believed, this default allowed the RTC to seize the escrow funds. This letter erroneously identified the RTC as receiver for FSB, instead of receiver for FSA. The letter also did not mention the administrative claims process or the January 28 deadline. Elmco did not submit a claim to the RTC before this date.

In May of 1995, Elmco filed this suit in the United States District Court for the District of Maryland, naming as defendants FSA, the RTC as Conservator for FSA, and the RTC as Receiver for FSB. This complaint sought declaratory judgment that (1) the settlement agreement was still in effect between FSA and Elmco, (2) the previous letter agreement regarding the escrow account was superseded by the settlement agreement, (3) the RTC was not entitled to apply the escrow funds to Elmco's debt, and (4) the RTC owed Elmco the amount it had seized. Elmco also sought an order requiring the RTC to refund the money.

But the Defendants responded with Rule 12 motions, claiming that the district court lacked jurisdiction and that Elmco had failed to state a claim. The motions claimed that, under FIRREA's administrative exhaustion requirement, Elmco's failure to first file its claim with the RTC divested the district court of jurisdiction. Elmco then amended its complaint to add the RTC as Receiver for FSA as a defendant, and also to seek declaratory judgment that the time for it to file its complaint with the RTC had not yet expired.

On the defendants' motions, the district court dismissed the claims for lack of subject matter jurisdiction, holding that, because Elmco had not first presented its claims to the RTC, FIRREA barred any court from taking jurisdiction over those claims. It also rejected Elmco's argument that the RTC's failure to mail it notice of the administrative claims process had deprived it of any opportunity to present its claim, thus had violated its due process rights.

4

Elmco now appeals, claiming primarily that lack of mailed notice did violate its due process rights.

II.

Elmco contends that the RTC's failure to mail it notice of FSA's receivership and the accompanying administrative claims process rendered the ensuing extinguishment of its claim unconstitutional under the Fifth Amendment's Due Process Clause. We conclude that failure to mail notice, when coupled with Elmco's lack of sufficient knowledge to charge it with a duty to inquire further into the claims process, did make discharge of Elmco's claim unconstitutional.

A.

A brief outline of FIRREA's relevant provisions is in order. FIRREA establishes an administrative process that allows the RTC, acting as receiver for a failed institution, to settle claims against that institution and liquidate its assets. See 12 U.S.C. § 1821(d); Tillman v. Resolution Trust Corporation, 37 F.3d 1032, 1035 (4th Cir. 1994); Brady Dev. Co. v. Resolution Trust Corporation, 14 F.3d 998, 1003 (4th Cir. 1994). Upon becoming receiver, the RTC must promptly publish notice to the institution's creditors that they must present their claims before a certain date--the "bar date"--which is to be at least ninety days after publication of the notice. § 1821(d)(3)(B)(i). Furthermore, the RTC must mail a similar notice to (1) creditors appearing on the institution's books, and (2) claimants [1] not appearing on the

---

[1] As the Third Circuit has pointed out, FIRREA unfortunately does not define "claim," hence contains no definition of "creditor" or "claimant." National Union Fire Ins. Co. v. City Sav., F.S.B. , 28 F.3d 376, 386 (3d Cir. 1994). But that court, relying on analogous provisions of the Bankruptcy Code, defined "claim" as "an action asserting a right to payment," in contrast to a mere request for declaratory judgment. Id. at 387. Here, the district court concluded that, although Elmco's complaint technically requested declaratory judgment that it owned the funds and an order requiring RTC to refund them, it was in essence a claim for monetary relief. See JA 79. The Third Circuit itself has treated such actions, though "dressed in injunctive garb," as requests for monetary damages. See Rosa v. RTC, 938 F.2d 383, 393 (3d Cir. 1991). Accordingly, we have no trouble treating Elmco's facially declaratory and injunctive action as what it genuinely is, i.e., a "claim" against the assets of FSA.

books but whose names and addresses the RTC later discovers.
§ 1821(d)(3)(C).

The RTC may allow any claim filed before the bar date that is "proved to [its] satisfaction." § 1821(d)(5)(B). But, with one limited exception, the RTC has no such discretion as to claims filed after the bar date: "[C]laims filed after the [bar date] shall be disallowed and such disallowance shall be final." § 1821(d)(5)(C)(i). The one exception is that the RTC may, in its discretion, hear late-filed claims when the claimant "did not receive notice of the appointment of the receiver in time to file such claim before [the bar date]." § 1821(d)(5)(C)(ii); see F.D.I.C. v. diStefano, 839 F. Supp. 110, 117 (D.R.I. 1993) (as written, FIRREA makes receiver "sole gatekeeper" of such late-filed claims).

One whose claim the RTC denies on its merits or fails to rule on within 180 days may seek judicial or administrative review of that claim. § 1821(d)(6)(A). But, unless a claim is first presented to the RTC for resolution, no court has jurisdiction over it. § 1821(d)(13)(D).[2] These provisions combine to create an exhaustion requirement that, we have concluded, is "absolute and unwaivable." Brady, 14 F.3d at 1007 (quoting Glenborough New Mexico Assoc. v. Resolution Trust Corporation, 802 F. Supp. 387, 392-93 (D.N.M. 1992)). Importantly, FIRREA does not allow waiver of the exhaustion requirement even for claimants to whom the RTC failed to mail the required notice of the claims process and bar date. Freeman v. F.D.I.C., 56 F.3d 1394, 1402 (D.C. Cir. 1995); Intercontinental Travel Mktg., Inc. v. F.D.I.C.,

_____

[2] Section 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or [RTC] as receiver.

45 F.3d 1278, 1285 (9th Cir. 1994); <u>Meliezer v. Resolution Trust Corporation</u>, 952 F.2d 879, 882-83 (5th Cir. 1992).**3**

B.

To prove its due process claim, Elmco must of course show that it was deprived of a protected interest without due process of law. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 571 (1972). Here, Elmco points to a property interest, namely its claim against the RTC for refund of its seized escrow account. <u>See Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 428 (1982) (cause of action is a constitutionally protected property interest). Elmco has been deprived of that interest. Specifically, the statute's administrative claims process and jurisdictional bar apply directly to Elmco's claim; Elmco is a claimant who failed to file any claim before the bar date, and, under FIRREA, its failure to timely file requires the denial of its claim**4** --unless the RTC allows the late filing, which it admits it would not--and withdraws jurisdiction over that claim from all courts.**5** Accordingly, Elmco has been deprived of the property interest it had in its claim.

_____

**3** Of course, FIRREA does, as discussed above, make a partial exception for late claims filed by claimants who lacked timely notice of the receivership. § 1821(d)(5)(C)(ii). But the fact that the receiver has discretion to allow even these claims--and that review of those claims will be jurisdictionally barred if the receiver denies them as untimely--strongly suggests that Congress did not intend a full waiver of the exhaustion requirement as to claimants who did not receive the required mailed notice, regardless of whether they had independent knowledge of the receivership. <u>E.g.</u>, <u>Freeman</u>, 56 F.3d at 1402.

**4** Although Elmco never has actually filed a claim with the RTC, the statute itself requires the RTC to deny the claim as untimely, unless it concludes that Elmco lacked timely notice of FSA's receivership. The RTC has argued in its brief that Elmco did have such notice, Appellee's Br. at 21, and stated at argument that, if Elmco did now file a claim, it would treat the claim as time-barred. Accordingly, there is no question that Elmco's claim has been extinguished under FIRREA.

**5** Elmco briefly argues that, because FSA never had a right to seize its account, those funds never became FSA's "assets"; from this it concludes that its claim seeking repayment of those funds really does not affect FSA's assets, hence is not subject to FIRREA's jurisdictional bar. <u>See</u>

7

Elmco claims this deprivation of its property occurred without due process. As mentioned above, the claim is extinguished under FIRREA even though the RTC failed to give the statutorily required notice. See Meliezer, 952 F.2d at 882-83. Although the statute attaches no consequences to the RTC's failure to mail Elmco notice, several courts have recognized that depriving a claimant of its property interest under such circumstances may raise serious constitutional problems. See Freeman, 56 F.3d at 1403 n.2 (where requisite notice lacking, FIRREA claims process raises "serious due process concerns"); Greater Slidell Auto Auction, Inc. v. American Bank & Trust of Baton Rouge, 32 F.3d 939, 942 (5th Cir. 1994) (due process requires mailing of notice to known claimants); National Union, 28 F.3d at 391 (probable due process violation if insufficient notice given); diStefano, 839 F. Supp. at 118 (as applied, FIRREA may raise "grave constitutional concerns").

We agree. If the RTC denies as untimely the claim of one who never--via formal mailed notice or otherwise--is given constitutionally sufficient notice of the requirement that he file his claim before the bar date, such a denial, which is final and unreviewable, deprives that claimant of his claim without ever affording him notice of the deprivation or an opportunity to defend against it. Such a deprivation without appropriate notice or any opportunity to protest--either pre- or post-deprivation[6] --violates due process. E.g., Boley v. Brown, 10 F.3d 218, 222 (4th Cir. 1993) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

_____

§ 1821(d)(13)(D)(i) (withdrawing from all courts jurisdiction over claims seeking "payment from . . . or a determination of rights with respect to" a failed institution's assets). This claim is meritless because, even if Elmco's claim to the funds succeeds on the merits, satisfaction of the claim must necessarily be paid out of FSA's assets. Accordingly, Elmco's claim seeks "payment from" FSA's assets and is subject to the jurisdictional bar.

[6] The failure to give notice of the bar date, of course, denies the claimant an opportunity for pre-deprivation procedures, while FIRREA's elimination of any judicial review of denied, late-filed claims prevents post-deprivation remedy.

The question then becomes whether Elmco was given constitutionally adequate notice that its claim would be extinguished if not timely filed. That notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314; accord Mennonite Board of Missions v. Adams, 462 U.S. 791, 795 (1983). Under Mullane, a party with an identified, present property interest whose address is known or reasonably ascertainable is entitled to mailed notice of proceedings affecting his property right. Mullane, 339 U.S. at 317-20; see Greater Slidell, 32 F.3d at 942 ("Mailing of notice to claimants known to the receiver is constitutionally required"). As to such parties, mere constructive notice by publication is insufficient. Mullane, 339 U.S. at 318. As Mullane plainly put it, "The means [of notice] employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315.

Here, the RTC was aware of Elmco's claim against FSA's assets and knew Elmco's address. RTC's awareness is clear on the record; after becoming FSA's receiver, the RTC responded in writing to Elmco's request for refund of the escrow account and, after discussing its reasoning, concluded, "In view of the foregoing, we cannot accept your claim for refund." JA 29 (emphasis added). Given that the RTC, soon after becoming receiver, was aware of Elmco's identity, address, and asserted interest in FSA's assets, the RTC was constitutionally required to mail Elmco notice that, unless it asserted its claim in an administrative complaint filed before the bar date, its claim would be finally, unappealably denied. See Greater Slidell, 32 F.3d at 942. Under Mullane, then, mere publication of the bar date in local newspapers was insufficient as to Elmco.

The district court read our opinion in Tillman as, in effect, making constructive notice by publication sufficient in all cases. But such a holding would fly in the face of Mullane, and an analysis of the facts of Tillman shows that it is consistent with Mullane's teachings. Unlike Elmco, the claimant in Tillman was not one that the RTC discovered before its bar date. In fact, Tillman did not assert his claim against the failed bank until 30 months after that bank entered receivership. 37 F.3d at 1034. Also, his claim was not based on a standard creditor-debtor arrangement, but on an alleged contract under which

9

the bank had promised to reimburse him for expenses he incurred in the course of unrelated litigation. As a result, Tillman's interest appears not to have been known to RTC or to have been of a type that RTC should be required to discover on its own, and thus he fell within a class of claimants for whom notification by publication is sufficient. See Mullane, 339 U.S. at 317 (under those facts, notice by publication sufficient for those whose interests are contingent, future, or not likely to come to trustee's attention in normal course of business). Accordingly, Tillman's approval of notice to that claimant solely by publication is consistent with Mullane and may not be read as suggesting that notice by publication is constitutionally sufficient as to all claimants.

Nevertheless, Elmco may not complain of its lack of formal notice if it actually knew enough about the situation to place it on "inquiry notice" as to the details of the administrative process. Some courts have held that a claimant's knowledge that a bank has entered receivership triggers such inquiry notice. See Intercontinental Travel Mktg., 45 F.3d at 1285 (citing Greater Slidell, 38 F.3d at 182 (Aldisert, J., dissenting)); Flagler Fed. Sav. & Loan Ass'n v. Greenview Apartments, Ltd., 897 F. Supp. 1431, 1436 (S.D. Fla. 1995) (actual knowledge that bank was in receivership put claimant on inquiry notice). In a similar context, our sister circuits have rejected bankruptcy creditors' arguments that, absent formal notice of the deadline for contesting the dischargeability of their debtors' obligations, their interest in those obligations could not constitutionally be discharged. See In re Medaglia, 52 F.3d 451 (2d Cir. 1995); In re Alton, 837 F.2d 457 (11th Cir. 1988). Those courts have held that, once creditors actually learn that their debtors have filed for bankruptcy, they have a duty to inquire as to what they might be required to do to protect their interests, and, failing such inquiry, cannot claim lack of due process when those debts are discharged. See id.**7**

Accordingly, if Elmco had timely, actual knowledge that FSA had entered receivership, its due process argument might be defeated by its own failure to act on that knowledge to protect its rights. But nothing in the record suggests that Elmco had such knowledge. The par-

_____

**7** Significantly, the Alton court acknowledged that, if a creditor had no notice of the bankruptcy proceeding--formal or otherwise--Mullane would prohibit discharge of its debts. 837 F.2d at 461 n.4.

10

ties' brief correspondence contains nothing alerting Elmco that the RTC had become FSA's receiver. FSA's letter of February 7, 1994, in which it informed Elmco that the account had been seized, does not mention the RTC at all, although earlier negotiations informed Elmco that the RTC was then acting as FSA's conservator. The RTC's October 6, 1994--thus, post-receivership--letter denying Elmco's request for return of its funds was mistakenly sent on letterhead identifying the RTC as receiver for FSB, not FSA. But, given what Elmco already knew, the nature of this mistake was not obvious on the face of the letter. Although Elmco perhaps should have known that the RTC erred in writing as FSB's receiver, it might well have thought the appropriate letterhead would have identified the RTC as FSA's conservator, not its receiver.

The pleadings further suggest that, at the relevant times, Elmco did not know that the RTC was FSA's receiver. In its complaint, Elmco admits it knew that, in 1992, the RTC had been appointed receiver for FSB and conservator of FSA; but the complaint mentions nothing of the RTC's receivership of FSA. Indeed, Elmco did not originally sue the RTC as receiver for FSA, but only as receiver for FSB and conservator of FSA. It did not add the RTC as receiver for FSA to its list of defendants until it filed its amended complaint, by which time the RTC had put its receivership of FSA on record.

Nor could Elmco's knowledge that the RTC was FSA's conservator be held to put it on inquiry notice. Unlike its role as receiver, the RTC as conservator cannot initiate the administrative claims process or liquidate a failed bank. Instead, the conservator's function is to restore the bank's solvency and preserve its assets. Compare § 1821(d)(2)(D) (setting forth conservator's powers) with § 1821(d)(2)(E) (authorizing receiver to liquidate bank's assets) and § 1821(d)(3)(A) (authorizing RTC or FDIC "as receiver" to determine claims against failed bank).

Because nothing in the record suggests that Elmco had actual knowledge that FSA had entered receivership, nor that it had actual knowledge of the administrative claims process or bar date, Elmco was never placed on inquiry notice of the claims process. The RTC's failure to mail the required notice to Elmco thus is not excused by any actual knowledge Elmco had, and, under such circumstances, it would

11

violate the Due Process Clause of the Fifth Amendment to allow the RTC to treat Elmco's claim as untimely, hence permanently denied.

Put another way, Congress has established FIRREA's administrative claims process as the sole door through which a claimant against a failed bank may enter. The RTC may not constitutionally close that door and shut off the exclusive opportunities for review to which it leads without giving the claimant appropriate notice of its closing. Here, no such notice was given and the district court erred in rejecting Elmco's due process objection to dismissal of its action.

III.

There remains the question of the appropriate remedy for the district court's error. We approach it by asking what the district court should have done had it recognized the due process violation we have found. Had it done so, it should have rejected the RTC's jurisdictional defense, declined to dismiss the action, and entered a decree entitling Elmco to process its claim with the RTC free of the bar of § 1821(d)(5)(C)(i). That is the remedy most suited to correcting the specific constitutional violation, see Freeman 56 F.3d at 1404 n.2 (so suggesting), and to preserving the statutory scheme's requirement of first resort to the administrative claim process. We may order it in exercise of our appellate jurisdiction. 28 U.S.C.§ 2106.

The RTC points out that the necessary effect of such a remedy is to enjoin action by the RTC, and it contends that this is forbidden by FIRREA's anti-injunction provision, § 1821(j). We disagree.

That subsection does generally bar courts from enjoining the RTC's exercise of its statutory "powers or functions . . . as a conservator or receiver." § 1821(j); see In re Landmark Land Co., 973 F.2d 283, 290 (4th Cir. 1992) (Congress gave RTC "full rein to exercise its statutory authority without injunctive restraints"). But § 1821(j) does not immunize the RTC from all injunctions:

> By its terms, § 1821(j) shields only "the exercise of powers or functions" Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted or pro-

12

> poses to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions.

National Trust for Historic Preservation v. FDIC , 995 F.2d 238, 240 (D.C. Cir.), vacated, 5 F.3d 567 (D.C. Cir. 1993), and restored in relevant part, 21 F.3d 469 (D.C. Cir. 1994) (en banc). Because Congress could not authorize the RTC to act unconstitutionally, enjoining the RTC from doing so cannot infringe on its statutorily granted powers. Accordingly, FIRREA's anti-injunction provision does not prohibit the remedy identified.

IV.

For the reasons above stated, we vacate the district court's grant of summary judgment dismissing the action for lack of jurisdiction and remand to that court for entry of a decree in accordance with this opinion. In doing so, the court may in its discretion require Elmco to process its claim in accordance with applicable RTC procedures and may impose a reasonable time limit for filing of the claim.

SO ORDERED

13