UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: LANDMARK LAND COMPANY OF
CAROLINA, INCORPORATED, a
Delaware corporation; LANDMARK
LAND COMPANY OF OKLAHOMA,
INCORPORATED, an Oklahoma
corporation; LANDMARK LAND
COMPANY OF FLORIDA, INCORPORATED,
a Delaware corporation; LANDMARK
LAND COMPANY OF LOUISIANA,
INCORPORATED, a Louisiana
corporation; LANDMARK LAND
COMPANY OF CALIFORNIA,
INCORPORATED, a Delaware
corporation; CLOCK TOWER PLACE
INVESTMENTS, LIMITED, a California
corporation,

Debtors.

GLORIA ROBINSON, as Plan
Administrator of the Landmark
Insurance Group Plan and
Landmark 501(c)(9) Trust
Agreement for the Landmark Group
and as a participant of the
Landmark Group Insurance Program
and the 501(c)(9) Trust Agreement
for the Landmark Group; MICHAEL
WELCH, Trustee of the 501(c)(9)
Trust Agreement for the Landmark
Group and as a participant of the
Landmark Group Insurance Program

No. 96-1404

and the 501(c)(9) Trust Agreement
for the Landmark Group;
V. JACKSON CARNEY, as Trustee of
the 501(c)(9) Trust Agreement for
the Landmark Group and as a
participant of the Landmark Group
Insurance Program 501(c)(9) Trust
Agreement for the Landmark Group
and as persons entitled to receive
benefits under the Landmark
501(c)(9) Trust,
Plaintiffs-Appellants,

v.

RESOLUTION TRUST CORPORATION, a
Conservator for Oak Tree Federal
Savings Bank in Receivership and
its successor the FEDERAL DEPOSIT
INSURANCE CORPORATION; LANDMARK
LAND COMPANY OF FLORIDA,
INCORPORATED; LANDMARK LAND
COMPANY OF OKLAHOMA,
INCORPORATED; LANDMARK LAND
COMPANY OF CAROLINA,
INCORPORATED; LANDMARK LAND
COMPANY OF LOUISIANA,
INCORPORATED; LANDMARK LAND
COMPANY OF CALIFORNIA,
INCORPORATED; NORTHERN CALIFORNIA
RANCH, INCORPORATED, formerly
known as Carmel Valley Ranch, a
California corporation,
Defendants-Appellees,

2

CLOCK TOWER PLACE INVESTMENTS,
LIMITED,
Defendant & Third Party
Plaintiff-Appellee,

v.

TRUST AGREEMENT FOR THE
LANDMARK GROUP, V. Jackson
Carney, Gloria Robinson and
Michael Welch are
trustees/administrators of the
"Trust,"
Third Party Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Falcon B. Hawkins, Chief District Judge.
(CA-95-4005-2-1, CA-91-3287-2-1, BK-91-5814,
CA-91-3286-2-4-1, BK-91-5815, CA-91-3291-2-1, BK-91-5816,
CA-91-3290-2-1, BK-91-5817, CA-91-3289-2-1, BK-91-5819,
CA-91-3288-2-1, BK-91-5818)

Argued: March 7, 1997

Decided: April 7, 1997

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Brett Dean Sanger, BROWN & SANGER, P.C., Okla-
homa City, Oklahoma, for Appellants. Gregory Evan Gore, FED-

3

ERAL DEPOSIT INSURANCE CORPORATION, Washington, D.C., for Appellees. **ON BRIEF:** H. Blanton Brown, BROWN & SANGER, P.C., Oklahoma City, Oklahoma; Thomas S. Tisdale, Jr., Timothy W. Bouch, Stephen P. Groves, YOUNG, CLEMENT, RIVERS & TISDALE, L.L.P., Charleston, South Carolina; Gerald P. Green, PIERCE, COUCH, HENDRICKSON, BAYSINGER & GREEN, Oklahoma City, Oklahoma, for Appellants. Ann S. DuRoss, Assistant General Counsel, Thomas L. Hindes, Senior Counsel, Thomas Bolt, FEDERAL DEPOSIT INSURANCE CORPORATION, Washington, D.C.; Rex Veal, G. Patrick Watson, POWELL, GOLDSTEIN, FRAZER, MURPHY, Atlanta, Georgia; C. E. Hardin, Jr., James A. Merritt, Jr., BERRY, ADAMS, QUACKENBUSH & DUNBAR, P.A., Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

In this case, participants in an employee benefit plan seek to recover certain funds from and enjoin certain actions of the plan sponsor, a subsidiary of a failed banking institution now under the control of the Federal Deposit Insurance Corporation ("FDIC"). The district court held that the anti-injunction provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(j) (1994), prohibits the participants' claims for injunctive relief; therefore, it dismissed those claims for lack of subject matter jurisdiction. We affirm and remand.

I.

Gloria Robinson, V. Jackson Carney, and Michael Welch are participants in an employee welfare benefit plan (the Plan) established by the Landmark companies. The Landmark companies developed,

4

owned, and managed a large portfolio of resort residential communities. Landmark Land Co. v. RTC (In re Landmark Land Co.), 973 F.2d 283, 286 (4th Cir. 1992). Clock Tower Place Investments, Limited was a holding company for the Landmark companies and Oak Tree Savings Bank was the sole owner of Clock Tower.

In October 1991, Clock Tower and its subsidiaries petitioned for Chapter 11 relief. In order to ensure adequate funding for the Plan, a voluntary employees' beneficiary association trust ("the Trust") was created in accordance with 26 U.S.C. § 501(c)(9) (1994).

Immediately following the bankruptcy of Clock Tower and its subsidiaries, the Office of Thrift Supervision placed Oak Tree in receivership and appointed the Resolution Trust Corporation ("RTC") as its receiver. Upon the dissolution of the RTC, the FDIC took its place. Thus the FDIC now controls Oak Tree and all its subsidiaries, including Clock Tower.

The Trust Agreement provides that no funds may "be used for, or diverted to, purposes other than to provide the benefits contemplated under the Plan for the exclusive benefit of covered employees and their dependents, except [taxes and administrative expenses]." However, between 1988 and 1994, the Plan paid more than $900,000 of medical benefits to certain non-employees (including independent contractor golf pros and insurance agents). The benefits were paid because of misrepresentations by former Landmark corporate officers and Plan fiduciaries. Although Appellants all served as upper level management for Clock Tower or its subsidiaries, Appellants claim that they did not know of these misrepresentations until 1995.

Appellants further assert that counsel for Clock Tower told them that unless the Trust was reimbursed for these improper payments, it could lose its tax-exempt status. In November 1995, Carney wrote a "case memorandum" to the RTC's Senior Credit Review Committee, requesting that Clock Tower's budget be amended so that the company would pay an additional $2.1 million (the original payment plus interest) into the Trust. In December 1995, the RTC conditionally rejected the case memorandum's proposal but recommended that the FDIC review it (because the RTC would cease to exist as of January

5

1, 1996). Appellants did not file a formal administrative claim with the RTC or the FDIC.

Instead, purportedly concerned about their personal liability as fiduciaries of the Plan, Appellants proceeded to file this action, in their fiduciary and participatory capacities, against Clock Tower, its subsidiaries, the RTC, and the FDIC. Appellants sought an injunction prohibiting termination of the Plan, seizure of the Trust assets, discharge of Appellants and an injunction and/or damages resulting in a $2.1 million transfer from Clock Tower to the Trust, as well as additional damages. Clock Tower and the FDIC moved to dismiss these claims for lack of subject matter jurisdiction and filed numerous counterclaims as well as a third party complaint.

In March 1996, the district court granted the FDIC's and Clock Tower's motions to dismiss. The court found that § 1821(j), the anti-injunction provision of FIRREA, barred the requested injunctive relief. With respect to the damages claim, the court found that Appellants had failed to exhaust their administrative remedies. The district court stayed determination of the counterclaims and the third party complaint pending appeal of its order dismissing Appellants' claims.

Appellants moved for a stay of that order and noted an immediate appeal to this court. However, they failed to file a petition for permission to appeal their interlocutory damages claim; instead, they simply filed an appellate brief addressing both injunctive relief and damages. In April 1996, we denied their motion for a stay pending appeal. In August 1996, we granted the FDIC's motion to dismiss the appeal of the damages issue, as interlocutory.[1]

_____

[1] In November 1996, Appellants filed a new action in the district court, alleging inter alia that (1) they have now exhausted their administrative remedies because they filed an administrative claim with the FDIC, to which the FDIC failed to respond within the required 180 days and (2) the FDIC has removed all three Appellants from their positions as Plan Administrator and Trustees, replacing them with former FDIC employees. Appellants' damages claim will, of course, be dealt with by the district court in due course and is not presently before us. The FDIC and Clock Tower filed two motions to dismiss the parties in their fiduciary capacities, noting that Appellants are no longer Plan fiduciaries and the newly appointed fiduciaries unsurprisingly do not wish to pursue the appeal. However, because Appellants concededly retain standing to bring this appeal as Plan participants, we need not, and do not, reach these related motions to dismiss in part.

II.

The anti-injunction provision of FIRREA states:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j) (1994). This statute steers all review of FDIC actions into damages claims, which are examined through the administrative claims process. See Gross v. Bell Sav. Bank PaSA, 974 F.2d 403, 408 (3d Cir. 1992) (finding it "implicit from the broad language of § 1821(j) [that] Congress has crafted a damages remedy for those who allege harm from the RTC"). "The comprehensive scheme of FIRREA indicates Congress' intent to allow the RTC full rein to exercise its statutory authority without injunctive restraints imposed by bankruptcy courts or district courts in other proceedings." Landmark Land Co. v. RTC (In re Landmark Land Co.), 973 F.2d 283, 290 (4th Cir. 1992). Judicial exceptions to anti-injunctive statutes, as created in South Carolina v. Regan, 465 U.S. 367 (1984), cannot be applicable when, as here, adequate alternative remedies exist. Nevertheless, Appellants claim that § 1821(j) does not bar the injunctive relief that they seek.

A.

Appellants initially argue that § 1821(j) has been superseded by the subsequent amendment of § 106 of the Bankruptcy Code. The new § 106 provides:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106, . . . 502, 503, 1107, . . . 1141 [and] 1142 . . . of this title.

7

> (2) The court may hear and determine any issue aris-
> ing with respect to the application of such sec-
> tions to governmental units.

> (3) The court may issue against a governmental unit
> an order, process, or judgment under such sec-
> tions or the Federal Rules of Bankruptcy Proce-
> dure, including an order or judgment awarding a
> money recovery . . . .

11 U.S.C. § 106(a) (1994), as amended by Bankruptcy Reform Act of
1994, Pub. L. No. 103-394, § 113, 108 Stat. 4106, 4117-18. Gener-
ally, a court assumes that a later-enacted, more specific statute super-
sedes a more general, earlier statute. See Landmark, 973 F.2d at 289-
90 (finding persuasive "the proposition that general statutory lan-
guage of the Bankruptcy Code is superseded by the more specific
anti-injunctive language found in [FIRREA]"). See also Parker North
Am. Corp. v. RTC (In re Parker North Am. Corp.), 24 F.3d 1145,
1152 (9th Cir. 1994) (same).

However, the amendment of § 106 does not affect the outcome
here because we address no bankruptcy claim at this time. Appellants
are not debtors nor yet even creditors. At the time of filing this action,
they had not lodged a bankruptcy claim against the Landmark debt-
ors, despite claiming in their briefs that they"were proceeding in the
District Court under Sections 105, 502, 503, 1141, and 1142 . . . ."
Brief of Appellants at 18. Although Appellants have, since the time
of the district court order, filed a motion for leave to file a proof of
claim out of time, no bankruptcy claim is properly before us at pres-
ent.

B.

Appellants also maintain that the terms of Landmark's bankruptcy
reorganization plan authorized the district court to retain jurisdiction
over the Landmark entities to address any bankruptcy-related dis-
putes. In the reorganization plan, Clock Tower agreed that:

> [T]he Court shall retain such jurisdiction over the Cases
> after the Effective Date as is legally permissible until the
> Plan Termination Date, including jurisdiction to:

8

> 1. Allow, disallow, determine, liquidate . . . any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims . . . .

Appellants assert that this provision prevents the FDIC from relying on § 1821(j). As noted above, any potential bankruptcy claim the Appellants have is still pending below; accordingly, we cannot reach the merits of such a claim at this juncture.

C.

Finally, Appellants assert that § 1821(j) does not bar their claims for injunctive relief because the assets at issue in this case are not assets of a failed financial institution, and thus not subject to the FDIC's control under FIRREA. See 12 U.S.C. § 1821(d) (1994). Specifically, Appellants maintain that the FDIC has attempted to assert authority over Trust assets, which belong not to the failed banking institution or its subsidiaries but to the participants and beneficiaries of the Plan.[2]

Section 1821(j) only bars a federal court from acting "to restrain or affect the exercise of <u>powers or functions of the [FDIC]</u>." (emphasis added). If asserting authority over the Trust assets is indeed beyond the FDIC's "powers or functions" as receiver for a failed banking institution, the anti-injunction provision of § 1821(j) would not apply. See <u>Gross</u>, 974 F.2d at 407 (holding that "federal courts have the ability to restrain the RTC where the Corporation is acting clearly outside its statutory powers"); <u>Landmark</u>, 973 F.2d at 289 n.3

---

[2] To the extent Appellants seek a mandatory injunction requiring the FDIC to pay the Trust $2.1 million assertedly owed by Clock Tower, we addressed and rejected this argument in <u>Elmco Props., Inc. v. Second Nat'l Fed. Sav. Assn.</u>, 94 F.3d 914 (4th Cir. 1996). In that case, the plaintiffs also claimed that the assets at issue were not assets of the failed bank because the bank wrongfully possessed them. We found this position "meritless, because, even if [plaintiff's] claim to the funds succeeds on the merits, satisfaction of the claim must necessarily be paid out of [the failed bank]'s assets." <u>Id.</u> at 920 n.5.

(distinguishing cases where an injunction could issue because "plaintiff alleged that the RTC was acting beyond the scope of its statutory authority as receiver or conservator").

In fact, almost all of the FDIC acts that the Appellants have sought to enjoin were easily within the FDIC's statutory powers. The RTC, and now the FDIC, has broad "control over all of[a failed] thrift's assets." Landmark, at 290. Because the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution," 12 U.S.C. § 1821(d)(2)(A)(i) (1994), we must examine Oak Tree's powers to control the Plan. As Clock Tower's whole owner, Oak Tree may take any action available to Clock Tower under the Trust Agreement. Therefore, under this Agreement, Oak Tree could terminate the Plan, replace the Trustees, and generally exercise significant control over Trust assets. Consequently, a federal court cannot enjoin the FDIC from taking these actions on Oak Tree's behalf. See Rosa v. RTC, 938 F.2d 383, 398-99 (3d Cir. 1991) (finding that because the failed institution's Board of Directors had the right to terminate a benefit plan, the court could not enjoin the RTC from doing so). Thus, the district court was clearly correct in holding that § 1821(j) barred it from issuing an injunction prohibiting the FDIC from terminating the Plan and replacing Appellants as Trustees.

However, under the present terms of the Trust Agreement, neither Clock Tower nor Oak Tree could have seized the Trust's assets. While the Agreement may be amended, it provides that"[n]o such amendment shall authorize or permit any part of the Trust Fund to revert to or become the property of [Clock Tower]." This provision presumably was necessary to allow the Trust to obtain tax-exempt status. See 26 C.F.R. § 1.501(c)(9)-4 (1996) (Absent certain exceptions, "if . . . on dissolution [the association's] assets will be distributed to its members' contributing employers, . . . the association is not described in section 501(c)(9).").

The mere fact that an action of the FDIC may violate state contract law, federal tax law, or ERISA does not entitle a federal court to enjoin the FDIC, because "[e]ven claims seeking to enjoin the [FDIC] from taking allegedly unlawful actions are subject to the jurisdictional bar of §1821(j)." RPM Invs., Inc. v. RTC , 75 F.3d 618, 621 (11th Cir. 1996) (refusing to enjoin alleged breach of contract). See also

10

National Trust for Historic Preservation v. FDIC, 21 F.3d 469 (D.C. Cir. 1994) (refusing to enjoin sale of property in alleged violation of National Historic Preservation Act); Rosa, 938 F.2d at 397-99 (refusing to enjoin allegedly illegal termination of ERISA plan); Ward v. RTC, 996 F.2d 99 (5th Cir. 1993) (finding sale of real estate belonging to failed bank within the scope of RTC's function, even if done illegally); Gross, 974 F.2d at 407-08 ("[W]here the RTC performs functions assigned it under the statute, injunctive relief will be denied even where the RTC acts in violation of other statutory schemes . . . . We find here that the availability of injunctive relief does not hinge on our view of the proper exercise of otherwise-legitimate powers.") (citations omitted).

While the illegality of the FDIC's actions would not render the § 1821(j) anti-injunction bar inapplicable, if the FDIC acted beyond the scope of its statutory powers § 1821(j) would nevertheless not apply because the FDIC's immunity from a court's equitable powers is confined to actions within the scope of the FDIC's authority. FIRREA grants the FDIC power over "assets of the[failed banking] institution." See 12 U.S.C. § 1821(d) (1994). If it were beyond the power of the FDIC as articulated in § 1821(d) to seize the Trust assets, a federal court could enjoin that action. To date, however, the FDIC has not attempted to seize these assets. Moreover, in its appellate brief, the FDIC has expressly stated that it has "never contended that the assets of the Trust belong to the receivership estate." Brief of Appellees at 20. Counsel for the FDIC repeatedly made a similar concession at oral argument. In light of these uncontroverted representations, it would be speculative for us to determine if the FDIC would be acting outside the scope of its authority if it did seize the assets of the Trust. We refuse to engage in such speculation.

III.

The district court's order dismissing Appellants' claims for injunctive relief for lack of subject matter jurisdiction is affirmed. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED AND REMANDED

11