In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-1701

JEROME A. MAHER and JOHN R. GRAVEE,

*Plaintiffs-Appellants*,

*v.*

FEDERAL DEPOSIT INSURANCE CORPORATION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 6828—**Rebecca R. Pallmeyer**, *Judge.*

_____

ARGUED FEBRUARY 8, 2006—DECIDED MARCH 21, 2006

_____

Before MANION, KANNE, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.*  Jerome Maher and John Gravee sued the Federal Deposit Insurance Corporation ("FDIC") seeking pension trust funds from their employment with a failed bank. The district court determined that res judicata barred the suit. Maher and Gravee appeal. Because the case is moot, we dismiss. Additionally, to encourage finality in this litigation, we alternatively affirm the district court's judgment that Maher's and Gravee's claims are barred by res judicata, or claim preclusion.

**I.**

Jerome Maher served as the vice-president and John Gravee as the president of First Federal Savings and Loan of Wilmette, Illinois ("First Federal"). First Federal merged with three failing financial institutions in 1982, forming Horizon Federal Savings Bank ("Horizon"). Maher and Gravee became the top two officers of the new institution. The merger required Maher and Gravee to relinquish their pension plans established at First Federal, with the understanding that a new plan could be established at Horizon once the new institution gained financial stability. In 1985, Horizon did create a new plan for them: a "rabbi trust," in which the principal remained a general asset of Horizon, allowing Horizon's creditors to reach the trust assets in the event of bankruptcy or some other event of default. Two years later, the trust was amended to create a "secular trust," which placed the trust assets with an independent trustee, beyond the reach of Horizon's creditors. Subsequently, on January 11, 1990, the federal Office of Thrift Supervision ("OTS") declared Horizon insolvent. The OTS appointed the Resolution Trust Corporation ("RTC") as Horizon's receiver. The RTC terminated Maher and Gravee on June 28, 1990.

Maher and Gravee then requested payment of the pension trust funds from its independent trustee. After the RTC ordered the trustee not to disburse the funds, Maher and Gravee filed suit against the trustee, the RTC, and Horizon seeking the assets held in the trust funds. A district court held that the secular trust violated 12 C.F.R. § 563.39 (1987) and was therefore invalid. *Maher v. Harris Trust & Sav. Bank*, No. 90-C-5118, 1994 WL 682625 (N.D. Ill. Dec. 5, 1994). This court affirmed that decision. *Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1191 (7th Cir. 1996) ("[T]he property

interest plaintiffs acquired as a result of the trusts are void and [ ] the trust assets will be shared by all persons with proper claims against Horizon.").

The RTC, which was succeeded by the FDIC, commenced separate litigation, suing Maher, Gravee, and the directors of Horizon for gross negligence. *F.D.I.C. v. Maher*, 966 F. Supp. 622 (N.D. Ill. 1997). Maher and Gravee filed counterclaims against the RTC, OTS, and FDIC seeking the trust funds and other compensation. After a settlement with the other directors, Maher's and Gravee's counterclaims were transferred to the Court of Federal Claims, where they were dismissed for failure to state a claim. *Maher v. United States*, 48 Fed. Cl. 585, 587 (Ct. Cl. 2001) ("[T]he facts [Maher and Gravee] have pled, even when taken at face value, are insufficient, as a matter of law, to make out a contract claim against the United States."). The Federal Circuit affirmed. *Maher v. United States*, 314 F.3d 600 (Fed. Cir. 2002).

In this phase of the dispute, Maher and Gravee sued the FDIC "as Successor Receiver of Horizon Federal Savings Bank" seeking "enforcement of their remaining employment and pension benefits." They claim that the invalidation of the secular trust resurrected the rabbi trust, and they seek payment of those funds. The FDIC filed a motion to intervene in its corporate capacity, as opposed to its capacity as a receiver, to defend the lawsuit; this distinction is important because the FDIC's liability varies with its capacity. In its corporate capacity, the FDIC's liability for claims against a receiver is limited to the assets of the receivership. 12 U.S.C. § 1821(i)(2). The district court permitted the intervention and determined that the claims against the FDIC were barred by res judicata. Maher and Gravee appeal. The FDIC argues on appeal that this court lacks subject matter juris-

diction, that the claims are moot, and that they are barred by res judicata.

## II.

We first address this court's subject matter jurisdiction. The complaint states generally that "Defendants [*sic*] failure to honor [Maher's and Gravee's] pension rights is a violation of federal law." The complaint then cites to the "Employe[e] Retirement Income Security Act, 29 U.S.C. § 1140 et seq. (ERISA)." Earlier in the complaint, Maher and Gravee also refer to the Financial Institutions Reform Recovery and Enforcement Act (FIRREA). On appeal, they claim that both acts provide a basis for subject matter jurisdiction.

Under FIRREA, a claimant can file an administrative claim with the receiver, which then has 180 days to allow or deny the claim. If the receiver denies or does not render a decision within 180 days, the claimant has 60 days to file suit. Federal courts lack jurisdiction to address claims that fail to comply with FIRREA's administrative claims process. 12 U.S.C. § 1821(d)(6)(A); *Maher*, 75 F.3d at 1190-91; *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 193 (7th Cir. 1993). Maher and Gravee filed this lawsuit more than a year after the termination of the receivership and more than a decade after they claimed to have filed administrative claims on April 12, 1990. Thus, since they failed to comply with the administrative procedures, FIRREA does not provide subject matter jurisdiction over these claims.

Nonetheless, Maher and Gravee also claim jurisdiction based on ERISA. Although they only describe a claim under ERISA in cursory fashion, they do invoke federal jurisdiction on this basis. Even if the complaint may fail to state a

claim upon which relief may be granted, the court has subject matter jurisdiction over the disposition of the ERISA claim. *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995) ("[I]f a plaintiff fails to properly allege a claim for relief brought under a federal statute, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6), rather than Rule 12(b)(1) [for lack of subject matter jurisdiction]." (citation omitted)); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, No. 05-2925, 2006 WL 306955, (7th Cir. Feb. 10, 2006) ("[C]omplaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule."); *see also Primax Recoveries, Inc. v. Gunther*, 433 F.3d 515, 517 (6th Cir. 2006) ("[A] federal court has subject-matter jurisdiction, even if the plaintiff is unable to state a claim upon which relief can be granted."). Therefore, we have subject matter jurisdiction over the ERISA claims.

Maher and Gravee, however, cannot overcome the next hurdles of mootness and res judicata. "Under Article III of the Constitution, the exercise of federal judicial power depends on the existence of a justiciable case or controversy; federal courts do not have jurisdiction to review moot cases." *Buckley v. Archer-Daniels-Midland Co.*, 111 F.3d 524, 526 (7th Cir. 1997) (citation and internal quotation omitted). This court has stated that "[a] case is moot if there is no possible relief which the court could order that would benefit the party seeking it." *In re Envirodyne Indus.*, 29 F.3d 301, 303 (7th Cir. 1994) (citation omitted).

Maher and Gravee brought this suit against the FDIC, which appears only in its corporate capacity. In that capacity, the FDIC is not liable for any other actions taken by the FDIC in its capacity as a receiver. *See F.D.I.C. v. Roldan Fonesca*, 795 F.2d 1102, 1109 (1st Cir. 1986). The Horizon

receivership was terminated on January 1, 2002, prior to the filing of this case. Advanced notice of the termination was published in the Federal Register. Notice, 64 Fed. Reg. 41121 (July 29, 1999). With the termination, the receivership ceased to exist as a legal entity and the FDIC in its corporate capacity assumed only limited liabilities from the receiver, which cannot exceed the liquidated assets of Horizon. 12 U.S.C. § 1821(i)(2). Presently, as the FDIC succinctly states in its brief, "[n]o assets remain to satisfy a judgment in [ ] favor [of Maher or Gravee]." Without any receivership assets, there can be no recovery from the FDIC in its corporate capacity. *See First Ind. Fed. Sav. Bank v. F.D.I.C.*, 964 F.2d 503, 507 (5th Cir. 1992) ("Congressional policy requires that creditors of failed institutions look only to the assets of the institution for recovery of their losses, and not to the taxpayers."). Since the FDIC's corporate liability is limited to the assets of the receivership, and since the receivership is now terminated and without assets, there is no possible relief for this court to order for Maher or Gravee against the FDIC in its corporate capacity. We therefore dismiss for lack of a justiciable case or controversy.

Alternatively, even if the court were able to order relief, the claims are clearly barred by the doctrine of res judicata, or claim preclusion. In fact, this case presents a paradigm of the doctrine. As this court has instructed, "*[r]es judicata* bars suits where there is [1] a final judgment on the merits; [2] an identity of the issues of the lawsuit; and [3] an identity of the parties or their privies." *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) (internal quotation and citation omitted). Res judicata also bars litigation of claims that "could have been raised" in the previous litigation, but were not. *Golden v. Barenborg*, 53 F.3d 866, 869-70 (7th Cir. 1995).

The FDIC, Maher, and Gravee were parties in previous litigation that rendered a final judgment on the merits. Maher and Gravee had the opportunity to raise these claims in not one, but two previous lawsuits. First, Maher and Gravee sued the trustee of the secular trust and Horizon's receiver (whose liability was ultimately assumed by the FDIC), seeking the pension funds. Notably, that litigation concluded that the secular trust was invalid and even addressed claims about the rabbi trust, stating that:

> Plaintiffs seek as alternative relief, a declaration that the provisions of the rabbi trust be revived under the doctrine of substitution of contracts. However, the authorities plaintiffs cite do not support this novel contention and I decline to adopt it. Furthermore, revival of the rabbi trust would not change plaintiffs' rights with respect to the assets of the trust. Beneficiaries of a rabbi trust established by a thrift are unsecured creditors of the thrift; the [ ] receiver is entitled to the trust assets.

*Maher*, 1994 WL 682625, at *2, *aff'd Maher*, 75 F.3d at 1191.

Next, in the Court of Claims, Maher and Gravee brought a claim against the United States for its actions "through the RTC, OTS, and FDIC." *Maher*, 314 F.3d at 602. The Federal Circuit, in affirming the Court of Claims's decision dismissing the claim, stated that:

> To the extent Maher and Gravee have a claim for breach of their employment contracts, including a claim for payment of the proceeds of the deferred compensation trust, established for them by Horizon, such a claim would be directly against Horizon through its receiver, not indirectly through the government. Maher and Gravee made a failed attempt at such a claim more than

ten years ago when they sued Harris Bank, Horizon, and the RTC. See *Maher*, 75 F.3d at 1187, 1190-91. Moreover, under FIRREA, persons having claims against the assets of a thrift are subject to the administrative claims review process prescribed by 12 U.S.C. § 1821(d). The government argues that Maher and Gravee have failed to timely follow these procedures; Maher and Gravee argue otherwise. This issue is not framed by the Amended Complaint and is not properly before us on appeal.

*Id.* at 607 n.2. The Federal Circuit then concluded that "[t]he Amended Complaint in this case does not establish a cause of action against the government for . . . payment of the proceeds of the deferred compensation trusts." *Id.* at 607.

Maher and Gravee pursued or could have pursued claims on the secular and rabbi trusts in these previous cases. Their appellate brief even admits this continuing endeavor, stating that "[f]or 15 years of litigation, [Maher and Gravee] have sought to enforce these contractual rights." Under the doctrine of res judicata, Maher and Gravee are not entitled to seek repeatedly the pension funds on marginally different theories. Therefore, even if this case presented a justiciable case or controversy, their claims would be barred by the doctrine of res judicata.

### III.

Because Maher and Gravee fail to present a justiciable controversy, we DISMISS. Alternatively, we AFFIRM the district court's conclusion that the claims are barred by the doctrine of res judicata.

No. 05-1701                                                     9

A true Copy:

    Teste:

                       _____

                       *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*