In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1595

CRAIG CAMPBELL, not individually but as
Trustee of the Lyle P. Campbell 1994 Irrevocable Trust,

*Plaintiff-Appellant,*

*v.*

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver
for the First National Bank of Danville,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10 CV 02073—**Harold A. Baker**, *Judge*.

ARGUED SEPTEMBER 26, 2011—DECIDED APRIL 17, 2012

Before CUDAHY, POSNER, and WOOD, *Circuit Judges*.

CUDAHY, *Circuit Judge*.  This case revolves around notice and administrative exhaustion requirements for the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). The main issue, among the many suggested by the plaintiff, is whether twelve days' notice

provides a meaningful opportunity to submit a claim. FIRREA sets out the claim process for creditors or depositors connected to failed banks. The scheme allows the parties to preserve assets while avoiding complex litigation. FIRREA bars claimants from taking claims directly to court without first going through an administrative determination. The bar date is 90 days after the first publication of notice of receivership. Plaintiff-Appellant, Craig Campbell, learned of a potential claim against the Federal Deposit Insurance Corporation (FDIC) receiver twelve days before the bar date. Campbell did not contact the FDIC till several months after the bar date, at which time the FDIC denied his claim as time barred. Campbell appealed to the district court, which dismissed the case for lack of subject matter jurisdiction because the plaintiff had an opportunity to file a claim before the deadline but did not do so. On appeal, Campbell argues that his claim falls under § 1821(d)(5)(C)(ii), the exception to the FIRREA deadline, and that failure to find the authority to adjudicate would deprive him of due process. While we agree with Campbell that it is conceivable that a claim might arise so close to the bar date as to deprive a plaintiff of due process, that eleventh hour scenario is not present in this case.

Campbell is the Trustee of the Lyle P. Campbell 1994 Irrevocable Trust. Lyle Campbell was a senior executive at Southwest Bancorp and Chairman of First National Bank of Danville (Bank). As part of a retention package, the Bank purchased a split dollar life policy for Lyle Campbell's Trust from Northwestern Mutual

Life Insurance Company. The cash value of this policy totaled over $662,000. The Bank paid a portion of the premiums on the Policy. The Bank had a senior interest in the Policy to the extent of these premiums paid. To safeguard this senior interest, the Trust assigned the Policy to the Bank as collateral. From the date of issuance to September 2009, the Bank paid $421,890 of the premiums, while Lyle Campbell had paid the remaining premiums. His interest in the Policy totaled approximately $240,000.

On July 2, 2009, the Bank failed. It was shut down and placed under the receivership of the FDIC. Notices of the receivership were sent out and the FIRREA deadline for potential claims was set at October 7 (90 days from the publication of notice). On August 25, the receiver requested that the Insurer surrender the entire value of the Policy to the FDIC. On September 1, the Insurer surrendered the entire cash value of the policy to the FDIC. On September 24, the Trustee called the Insurer to discuss payment of the next premium and learned of this surrender.

Two weeks later, on October 6, 2009, the Trustee wrote the Insurer demanding return of the whole cash value of the Policy with a $421,890 loan against it (the value of the premiums paid by the Bank). The Trustee sent follow-up letters on November 5 and November 11. The Insurer replied at the end of November that it was not liable for surrendering the policy to the FDIC and pointed out that policy provisions imposing such liability were stricken.

The Trustee contacted the FDIC receiver for the first time on December 16. In January 2010, the FDIC advised the Trustee of records that Lyle and Craig Campbell received notice and proof of claim forms from the FDIC, that no proof of claims were filed and that the bar date for claims relating to the receivership, October 7, had already passed.

FIRREA sets out the claim process for creditors or depositors connected to failed banks. FIRREA bars claimants from taking claims directly to court without first going through an administrative determination. 12 U.S.C. § 1821(d)(13)(D) ("No court shall have jurisdiction . . ."). The receiver of the bank must publish notice at three one-month intervals informing the bank's creditors of the procedural requirements of claim filing. Claims must be presented within 90 days of the first publication of the notice. The receiver must also mail the publication notice to any creditor shown on the bank's books.

Claims filed after the bar date (90 days after first notice) are disallowed. The only exception is for claimants who "did not receive notice of the appointment of the receiver in time to file such claim before [the bar] date." § 1821(d)(5)(C)(ii). Courts have interpreted "in time to file such claim" narrowly to mean "at a time when the claimant could have filed such a claim." *Stamm v. Paul*, 121 F.3d 635, 641 (11th Cir. 1997).

While in the past we have referred to "[c]ompliance with the FIRREA process [as] a strict jurisdictional prerequisite," *Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1190

(7th Cir. 1996), it is our belief that in light of the Supreme Court's more recent decisions, *see, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1202-03 (2011); *Reed Elsevier, Inc. v. Muchnik*, 130 S.Ct. 1237, 1243-44 (2010); *Union Pacific R.R. Co. v. Bhd. of Locomotive Eng'rs*, 130 S.Ct. 584, 596-97 (2009), the proper characterization of FIRREA's rules for claims submission as claims processing rules. We note that the Second Circuit employed a similar approach in *Carlyle Towers Condominium Association v. FDIC*, 170 F.3d 301, 310 (2d Cir. 1999). It is clear that the Trustee did not submit a claim to the FDIC by the October 7 bar date. We must therefore determine if the Trust's action falls under the FIRREA time bar exception or not.

I.

The Trustee argues that his claim qualifies for this limited exception because he did not have notice of a potential claim until the Insurer's refusal to refund the policy to the Trustee in November, well after the bar date. If this were in fact true, then the Trustee would never have had a chance to file a claim and would be entitled to an extension. *See Carlyle Towers Condo. Ass'n*, 170 F.3d at 310. But, the FDIC correctly points out that the Trustee in fact learned of the surrender of the policy to the FDIC on September 24, 2009, two weeks before the bar date. At that point, the Trustee surely realized that the receiver's action adversely affected the Trust; the Trustee need not have believed that the FDIC was the only avenue for recovery in order to be

cognizant of a potential claim. Because it is clear that the Trustee had notice of the potential claim in September, and the filing window did not close until October, the Trustee cannot argue he qualifies for an exception on the theory that his claim arose post-bar date.

## II.

Alternatively, the Trustee argues that his claim should receive an extension because the claim arose in the 90-day window after the appointment of the receiver. The Trustee contends that failure to find the authority to adjudicate will deprive him of due process and thus FIRREA would be unconstitutional as applied to this case. In effect, the Trustee advances two arguments that, though he is not in technical compliance with the statute and he had actual notice of a potential claim before the bar date, he still ought to receive an extension because: his claim arose within the 90-day post-receivership window; and he learned of his claim so close to the bar date, twelve days, that he could not file a claim.

The Trustee's wider post-receivership argument (that the extension ought to apply to claims which arose within the 90-day window) is fairly easily disposed of. The Trustee asks us to break new legal ground. *See Whatley v. RTC*, 32 F.3d 905, 907 (5th Cir. 1994) (noting that FIRREA does not provide federal jurisdiction to claims filed post-receivership and after the bar date). No court has ever interpreted the claims process exception to apply to claims in existence within the 90-day

window post-receivership but pre-bar date. Rather, courts that have granted extensions have done so only when claims arose after the bar date had elapsed. *See Carlyle Towers Condo. Ass'n,* 170 F.3d at 305-06. Because the claim here arose at a time when submitting a claim was still possible, case law granting exceptions is easily distinguished from the case at hand. *Id.* at 309-10 (noting that FDIC-created time limits may only be waived for claims arising *after* the bar date).

The Trustee's narrower argument regarding claimants learning of claims so close to the bar date as to preclude meaningful response is far more compelling. This court can imagine such a scenario. However, we are unwilling to reinterpret 12 U.S.C. § 1821(d)(5)(C)(ii) to include claims that arose and came to the notice of claimants *twelve days* before the bar date. If we enlarged the exception so greatly, "claimant[s] would be able to bypass the submission of a claim . . . ignoring the deadline . . . then suing in district court." *Althouse v. RTC,* 969 F.2d 1544, 1546 (3d Cir. 1992). The Trustee makes much of the fact that a party who receives late notice may be ambushed by the actions of the FDIC receiver. The Trustee is correct when he points out that due process considerations might conceivably require the extension of the FIRREA exception in cases such as where the party learns of the claim at 11:59 p.m. on the bar date.

The goals of FIRREA, as expressed in the Act's opening provision, include "deal[ing] expeditiously with failed depository institutions," and "strengthen[ing] the enforcement powers of Federal regulators of depository

institutions." Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, § 101, 103 Stat. 183 (1989). The House Report of 12 U.S.C. § 1821(d) reveals that the dual purpose behind requiring administrative exhaustion is (1) to minimize costs to the receivership estate and to the legitimate claimants who share in the distributions from the estate, and (2) to minimize the burden on federal courts by avoiding needless litigation. H.R. REP. No. 101-54, pt. 1, at 419 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 215.

The legislative history of FIRREA, in addition to subsequent promulgations by the FDIC, also indicates that Congress gave considerable attention to the due process implications of the claim filing and administrative exhaustion requirements. *See* H.R. REP. No. 101-54, pt. 5, at 11-12 ("The Judiciary Committee amended this subsection both to clarify its provisions and to ensure that it comports with Supreme Court requirements for adjudication of claims as established in *Colt* [sic] *Independence Joint Venture v. FSLIC*, No. 87-996, 57 L.W. 4347 (Slip opinion issued March 21, 1989).") . It should be noted that members proposed a far more lenient approach to claims arising post-receivership than we currently follow. An Interim Statement of Policy issued by the RTC (predecessor to the FDIC) reflects the administrative agency's own concern about the implications for due process of the firm deadline for claim filings. The Interim Policy stated that "[t]he bar date pursuant to . . . 12 U.S.C. [§] 1821(d)(5)(C) for filing claims against a receivership (the General Bar Date) does not apply to any Post-Receivership Claim and the receiver

will not time bar any Post-Receivership Claim for failure to be presented to the receiver by the General Bar Date." *Interim Statement of Policy Regarding Procedures to Be Used with Regard to Claims Based Upon Acts or Omissions of the Receiver*, 59 Fed. Reg. 10663 (March 7, 1994).[1] This rule, had it been officially promulgated, would seem to support the Trustee's argument. However, this rule was never adopted.

This Interim Policy and the legislative record replete with references to due process requirements demonstrate that Congress was aware of due process concerns when drafting FIRREA.[2] Particularly in light of Congress's

---

[1] This interim policy alone, however, does not entitle the Trustee to an exception. This policy was in effect in 1994 and was the subject of a proposed administrative rule.

[2] The legislative record includes Congressman Brooks' report on the markups made to the bill by the House Judiciary Committee. Financial Institutions Reform, Recovery and Enforcement Act of 1989, 135 Cong. Rec. H2553-02, H2576, 61, 63 (emphasis added) ("The Committee on the Judiciary was granted sequential referral on the bill for the purpose of reviewing those provisions of the bill which are within the committee's rule X jurisdiction. *Principally those matters related to law enforcement and to the due process requirements of the Administrative Procedure Act. . . . The committee amended several sections of the bill to bring the procedures into line with the due process requirements of the Administrative Procedure Act*."). The House Judiciary Committee reviewed the deadline exception provisions. H.R. Rep. No. 101-54, pt. 5, at 11-12 ("Subsection 212(5), 'Notice Requirements', as

(continued...)

attention to the possible due process implications of the claim filing and administrative exhaustion requirements, a court would presumably be justified in finding that a claim arising within the filing window but so near the general bar date as not to afford a meaningful opportunity to file a claim with the FDIC is not subject to the bar date.

However, the near-midnight discovery scenario was not present here. Trustee had twelve days to draft and submit a claim. While this might not be an ideal amount of time to craft a claim, the Trustee in fact used this time to draft a detailed letter to the Insurer demanding repayment. The district court was justified in ruling that the Trustee could have presented a written claim to the FDIC receiver within that

---

(...continued)

recommended by the Banking Committee, establishes a new subsection (c)(3) in 12 U.S.C. [§] 1821 which sets forth the procedures for notice to claimants, resolution of claims, and time periods for the resolution of claims. The Judiciary Committee made only technical amendments to this subsection to clarify cross-references and to update the language of the provision."). The House Judiciary Committee's review of the "Payment of Insured Debts" provision to ensure compliance with due process. H.R. REP. No. 101-54, pt. 5, at 11-12 ("As recommended by the Banking Committee, this subsection establishes procedures for the payment of insured deposits; provides for the approval or rejection of claims; authorizes the establishment of rules and procedures for 'due process' as to such claims[.]"). This shows Congress's concern with due process.

two-week time period. Because Trust's claim was not filed within the bar window and the Trustee learned of the claim with enough time to draft a claim, the district court properly concluded that it did not have authority over the present matter.

In order to more closely resemble the near-midnight discoverer, the Trustee repeatedly mentions a purported lack of formal notice, in accordance with statutory prescriptions, provided by the FDIC. The FDIC claims to have mailed notice to the Trustee in his personal capacity as a depositor at the bank, but the Trustee claims that the Trust never received such a notice. The district court appears not to have ruled on this matter directly, since the Trustee argued in that court that he lacked notice of the need to file this particular type of claim. In contrast, here the Trustee argues that he lacked receipt of notice of the imposition of receivership. If the Trustee did in fact lack appropriate notice of receivership and the bar date would serve to extinguish his claim, there would be an obvious due process concern. *See Elmco Props., Inc. v. Second Nat'l Sav. Ass'n*, 94 F.3d 914 (4th Cir. 1996). But that did not happen here. The Trustee's notice argument is undercut by the fact that he is an executive at the Bank and would surely know it is in receivership. *See id*. at 921 (noting that courts should consider "if . . . [plaintiff] actually knew enough about the situation to place [him] on 'inquiry notice' as to the details of the administrative process"); *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1286 (9th Cir. 1994) (finding claimant with actual notice of receivership was on "inquiry notice

of the claims bar date"). Further, the Trustee admits he had actual notice of the surrender of the policy twelve days before the bar date.

The Trustee's briefs devote a great amount of space to the due process implications of a system that barred relief and never gave a party a reasonable opportunity to submit an action. These concerns are valid in principle, but the district court made a justified determination that the Trustee's knowledge of the surrender of the policy twelve days before the bar date presented him with a reasonable opportunity to submit a claim and that he neglected to do so probably for strategic purposes. We see no reason to disturb this judgment.

## III.

Lastly, the Trustee offers an equal protection argument, on the basis of the unequal treatment of claims arising before the bar date and those arising after the bar date. This argument is without merit. The Trustee is not part of a protected class, so to sustain this claim he must establish (1) he was intentionally treated differently than others who are similarly situated, and (2) there is no rational basis for this different treatment. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). There is clearly a rational reason for treating these two types of claims differently so this argument must fail.

For the foregoing reasons, we AFFIRM the judgment of the district court.