In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3458

SIDNEY R. MILLER,

*Plaintiff-Appellant,*

*v.*

FEDERAL DEPOSIT INSURANCE
CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10-cv-5153 — **Robert M. Dow, Jr.**, *Judge.*

ARGUED SEPTEMBER 28, 2012 — DECIDED DECEMBER 26, 2013

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Sidney Miller maintained accounts at Corus Bank for his currency-exchange business. In 2009 Corus Bank went under, and the Federal Deposit Insurance Corporation took it over as receiver. In its receivership capacity, the FDIC mailed letters to individuals and entities holding

potential claims against the bank informing them of the process for submitting claims. Miller received a letter and in December 2009 submitted claims totaling $6 million to the FDIC.

The FDIC disallowed Miller's claims on May 18, 2010, and on that same day mailed a notice of the disallowance to an address in Des Plaines, Illinois, that Miller maintained at Corus Bank. Miller had a forwarding request on file with the postal service directing that his Des Plaines mail be sent to a different address in Chicago. But he never received the notice of disallowance. Instead, the notice was returned to the FDIC as undeliverable, and Miller did not learn that his claims were disallowed until August 13, 2010, when an FDIC employee informed him of it over the telephone.

Three days later Miller instituted this action seeking judicial review of the disallowed claims. The FDIC moved to dismiss the complaint, arguing that Miller filed it after the statutory time limit for judicial review had elapsed. The district court granted the FDIC's motion and dismissed Miller's claim for lack of subject-matter jurisdiction. Miller appealed.

We affirm. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183, contains a general jurisdiction-stripping provision barring courts from reviewing claims seeking payment from, or a determination of rights to, the assets of failed banks for which the FDIC has been appointed receiver. 12 U.S.C. § 1821(d)(13)(D). A limited exception permits judicial review of claims disallowed by the FDIC, but only if the claimant files suit within 60 days of the date the FDIC issues its notice of disallowance. *Id.* § 1821(d)(6)(A)(ii). These statutory

provisions—the jurisdictional bar and the precisely delimited exception—work together and constitute a clear congressional statement that compliance with the 60-day time limit for judicial review of disallowed claims is a jurisdictional prerequisite, not a mere claim-processing requirement.

Moreover, as relevant here, a different subsection of the statute provides that the 60-day time limit commences when the FDIC mails the notice of disallowance to the address the claimant maintained with the bank in receivership, not when the claimant receives the notice. *See id.* § 1821(d)(5)(A). Because Miller filed his complaint more than 60 days after the FDIC mailed the notice to the address he maintained at Corus Bank, his complaint was untimely and the district court correctly dismissed it for lack of subject-matter jurisdiction.

## I. Background

Miller entered the currency-exchange industry in 1986 when he inherited a family-owned store. By 2001 he owned 11 currency-exchange stores in the Chicago area as well as Miller Auditing Corporation. Miller maintained various accounts for this business and his stores at Corus Bank. In September 2009, after Corus Bank failed, the Office of the Comptroller of the Currency appointed the FDIC as its receiver.

The FDIC mailed letters to individuals and entities with potential claims against Corus Bank. Miller received a copy of the letter, which contained information about the process for submitting claims and underscored the deadline the FDIC had

set for doing so: December 17, 2009. Notably, the letter also explained the time limit for seeking judicial review of a disallowed claim. Finally, the letter clarified that claims for insured deposits were governed by a different procedure because they were claims made against the FDIC in its corporate capacity as the insurer of deposits, not against the FDIC as receiver.[1]

Miller filed 13 claims: one for himself, one for Miller Auditing Corporation, and one for each of his 11 stores. In total he asserted that he was entitled to more than $6 million. He submitted his claims on the last day of the claims period—

---

[1] We emphasize the distinction between the FDIC as receiver and FDIC Corporate because "[i]t is well-settled that the FDIC operates in two separate and legally distinct capacities, each with very different responsibilities." *DeCell & Assocs. v. FDIC*, 36 F.3d 464, 469 (5th Cir. 1994); *see also Maher v. FDIC*, 441 F.3d 522, 525 (7th Cir. 2006); *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 708–09 (9th Cir. 1995). The responsibility of the FDIC as receiver is to "wind[] up the affairs of failed institutions, including selling assets and paying creditors' claims," whereas FDIC Corporate "functions as an insurer of bank deposits, and is charged with paying the insured deposits of failed banks within a reasonable time." *DeCell & Assocs.*, 36 F.3d at 469. The FDIC acting as receiver "has no authority to make deposit insurance determinations." *Id.* at 470. Miller's action is against the FDIC as receiver and seeks judicial review of the claims that it disallowed in that capacity. Although he suggests in his brief that the FDIC improperly failed to consider his insured-deposit claims, there is nothing to indicate that he filed insured-deposit claims against FDIC Corporate or complied with the process for doing so. *See* 12 U.S.C. § 1821(f). Because this action is against the FDIC as receiver based on the claims that it disallowed in the receivership, we have no occasion to address any claims he has made based on insured deposits.

December 17, 2009—and thereafter periodically called the FDIC to check on their status.

The FDIC disallowed Miller's claims on May 18, 2010. That same day it sent notice of the disallowance via certified mail to the Des Plaines, Illinois address that Miller had provided to Corus Bank. Miller had a forwarding order on file with the postal service directing that the mail he received at the Des Plaines address be sent to a different address in Chicago. For some unknown reason, however, Miller never received the notice of disallowance. Nor did the FDIC receive a return receipt indicating that the notice was successfully delivered. Instead, the notice was returned as undeliverable.

Miller remained unaware of the notice of disallowance for almost two months. In July he called the FDIC to inquire about the status of his claims. His call was not returned until August 12. In a telephone conversation with an employee of the FDIC the following day, Miller learned that the FDIC had disallowed his claims. At Miller's request the employee emailed him a copy of the notice of disallowance.

Three days later, on August 16, 2010, Miller filed a complaint in the district court seeking judicial review of his disallowed claims.[2] The FDIC moved to dismiss the complaint

---

[2] FIRREA provides for administrative and judicial review of disallowed claims. *See* 12 U.S.C. § 1821(d)(6)(A) (judicial review); *id.* § 1821(d)(7) (administrative review). Miller represented himself in the district court and filed suit immediately after learning of the FDIC's disallowance of his claims, so he was apparently invoking § 1821(d)(6)(A), which confers jurisdiction on federal courts to consider de novo the merits of the

(continued...)

for lack of subject-matter jurisdiction, arguing that Miller's complaint was untimely because he filed it more than 60 days after the date of the notice of disallowance of his claim—the limitations period specified in FIRREA—and that the 60-day time limit is a jurisdictional requirement. Miller disputed that the limitations period is jurisdictional. In addition, he insisted that even if the time limit is jurisdictional, he complied with it because he filed his complaint within 60 days of receiving notice that his claims were disallowed.

While the motion was pending, the FDIC filed with the district court a "Determination of Insufficient Assets to Satisfy Claims Against Financial Institution in Receivership," which it had published in the Federal Register on May 16, 2011. This "no-value determination" served as notice that there were insufficient assets in the Corus Bank receivership "to make any distribution on general unsecured creditor claims (and any lower priority claims) and therefore all such claims, asserted or unasserted, w[ould] recover nothing and have no value." Determination of Insufficient Assets to Satisfy Claims Against Financial Institution in Receivership, 76 Fed. Reg. 28,225, 28,226 (May 16, 2011). Miller filed a response, styled as a "Motion for

---

[2] (...continued)
underlying claim that was disallowed. *See* 12 U.S.C. § 1821(d)(6)(A); *Helm v. Resolution Trust Corp.*, 84 F.3d 874, 876 (7th Cir. 1996); *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1165 (7th Cir. 1995); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011); *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1003 (4th Cir. 1994). Miller continues to represent himself on appeal.

Declaratory Relief," in which he insisted that the FDIC's no-value determination did not moot his claims.

The district court granted the FDIC's motion to dismiss, holding that the 60-day limitations period for seeking judicial review of a claim disallowed by the FDIC as receiver is a jurisdictional requirement. The court also held that the 60-day period commenced when the FDIC mailed the notice of disallowance to the address Miller had on file with Corus Bank. The court concluded that Miller's complaint was untimely because it was filed after the 60-day period expired. Accordingly, the court dismissed Miller's complaint for lack of subject-matter jurisdiction and denied Miller's self-styled "declaratory relief" motion as moot.

## II. Discussion

We review de novo the district court's order dismissing Miller's complaint for lack of subject-matter jurisdiction, *see Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009), taking the facts alleged in the complaint as true and drawing reasonable inferences in Miller's favor, *see St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007); *Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003). When subject-matter jurisdiction is disputed, the district court may " 'properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.' " *St. John's United Church of Christ*, 502 F.3d at 625 (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554

(7th Cir. 1999)); *see also Apex Digital*, 572 F.3d at 443–44. We review any jurisdictional factual findings for clear error. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 670 (7th Cir. 2012).

Miller argues that FIRREA's 60-day time limit for judicial review of disallowed claims is not jurisdictional. He also argues that regardless of whether the limitations period is a jurisdictional bar or simply a nonjurisdictional procedural requirement, the clock does not start to run until the claimant receives the notice of disallowance. We address the second argument first. If Miller is correct that receipt is required, then his complaint was timely and we have no occasion to decide whether the limitations period is jurisdictional.

## A. FIRREA's Time Limit for Judicial or Further Administrative Review

Congress enacted FIRREA in response to the savings and loan crisis of the 1980s. *See DiVall Insured Income Fund Ltd. P'ship v. Boatmen's First Nat'l Bank of Kan. City*, 69 F.3d 1398, 1401 n.6 (8th Cir. 1995); *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 131 (3d Cir. 1991). One of FIRREA's main objectives is to facilitate the expeditious and efficient resolution of claims against failed banks. *See* § 101, 103 Stat. at 187; *Campbell v. FDIC*, 676 F.3d 615, 619 (7th Cir. 2012); *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995); *Brady Dev. Corp. v. Resolution Trust Corp.*, 14 F.3d 998, 1002–03 (4th Cir. 1994); *Marquis v. FDIC*, 965 F.2d 1148, 1152 (1st Cir. 1992); *Shain, Schaffer & Rafanello*, 944 F.2d at 131. To achieve this purpose,

FIRREA allows, and in certain situations requires, the FDIC to take over failed banks and empowers it as receiver to allow or disallow claims asserted against them. *See* 12 U.S.C. § 1821(c), (d)(3); *Farnik v. FDIC*, 707 F.3d 717, 720–21 (7th Cir. 2013); *Henderson v. Bank of New Eng.*, 986 F.2d 319, 320 (9th Cir. 1993). To ensure that claims are resolved quickly and efficiently, FIRREA establishes strict administrative prerequisites and deadlines that claimants must follow to lodge their claims and challenge any denials. *See Brady Dev. Corp.*, 14 F.3d at 1003. "FIRREA bars claimants from taking claims directly to court without first going through an administrative determination." *Campbell*, 676 F.3d at 617.

Our focus in this case is on the prerequisites and deadlines contained in 12 U.S.C. § 1821(d)(6)(A), which offers a claimant two options after the FDIC has either disallowed a claim or failed to act within 180 days of submission of a claim. *See* 12 U.S.C. § 1821(d)(6)(A); *Veluchamy v. FDIC*, 706 F.3d 810, 817 (7th Cir. 2013). One option is to request further administrative review of the claim. *See* 12 U.S.C. § 1821(d)(6)(A), (d)(7). A claimant who follows this route may, if unsuccessful or only partially successful, seek judicial review after the extra round of administrative process is complete. *See id.* § 1821(d)(7)(A). This form of judicial review proceeds under the Administrative Procedure Act. *See id.*; *Helm v. Resolution Trust Corp.*, 84 F.3d 874, 876 (7th Cir. 1996).

An unsuccessful claimant's other option is to forego additional administrative review and proceed directly to federal court. *See* 12 U.S.C. § 1821(d)(6)(A). If the claimant follows this route, the court conducts a de novo review of the

merits of the claim. *See Veluchamy*, 706 F.3d at 817; *Helm*, 84 F.3d at 876; *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1165 (7th Cir. 1995).

Whichever option the claimant chooses, FIRREA imposes a 60-day time limit within which he must act. *See* 12 U.S.C. § 1821(d)(6)(A). As we've noted, the statutory scheme gives the FDIC 180 days to allow or disallow a claim. *See id.* § 1821(d)(5)(A)(i). But the FDIC may resolve the claim much sooner, so the statute requires the claimant to either pursue additional administrative review or seek judicial review within 60 days of "the earlier of" two dates: (1) "the end of the period described in paragraph (5)(A)(i)" [i.e., the expiration of the 180-day period allotted to the FDIC to act on the claim]; or (2) "the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i)." *Id.* § 1821(d)(6)(A)(i), (ii).

This case concerns the trigger for the second date. Miller argues that "the date of any notice of disallowance" means the date on which the claimant actually *receives* the notice of disallowance. If he's right, then the first date specified in subsection (d)(6)(A)—the expiration of the 180-day period within which the FDIC must act on a claim—controls the outcome here because that's the earlier of the two possible dates for starting the 60-day time clock. The 180-day period for the FDIC to act on Miller's claims expired on June 15, 2010, but in this case the FDIC disallowed the claims by notice dated May 18, 2010, almost a month before that time period expired. Miller did not receive notice of the disallowance until August 13, 2010, so if his interpretation of the statute is correct—if *receipt* of the notice is required—then "the earlier

of" the two possible triggering dates was June 15, and his August 16 complaint was timely filed, though just barely.

The FDIC argues, on the other hand, that receipt of the notice of disallowance is immaterial, and the 60-day clock started running on May 18 when it mailed the notice of disallowance to the address Miller had on file with Corus Bank. On this reading of the statute, the deadline to file suit was July 17, and Miller's August 16 complaint was about four weeks too late.

Resolving this interpretive question requires us to determine what the statute means when it refers to "the date of a[] notice of disallowance." The statute cross-references subsection (d)(5)(A)(i), which establishes the procedure for the FDIC's resolution of claims against failed banks in its capacity as receiver. Subsection (d)(5)(A)(i) provides that the FDIC "shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim." *Id.* § 1821(d)(5)(A)(i). If the claim is disallowed, the FDIC must notify the claimant of the reasons for the disallowance and explain the procedures for additional agency or judicial review. *Id.* § 1821(d)(5)(A)(iv). The statute specifies what the FDIC must do to discharge its notice obligation:

> (iii) Mailing of notice sufficient
>
> The requirements of clause (i) shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the last address of the claimant which appears—
>
> (I) on the depository institution's books;

> (II) in the claim filed by the claimant; or
>
> (III) in documents submitted in proof of the claim.

12 U.S.C. § 1821(d)(5)(A)(iii).

Note that there is no requirement that the claimant actually *receive* the notice of disallowance. Instead, notification is complete when the FDIC mails the notice to one of three addresses enumerated in the statute. That is, the FDIC satisfies its notice obligation to the claimant by mailing the notice of disallowance to one of the addresses specified in subsection (d)(5)(A)(i) (provided, of course, that the contents of the notice otherwise comply with the statute). Because the 60-day time limit for seeking additional agency or judicial review is keyed to "the date of any notice of disallowance of such claim *pursuant to paragraph (5)(A)(i),*" *id.* § 1821(d)(6)(A), the date the notice was mailed starts the running of the clock, not the date the notice was received.

This strict rule may seem harsh, but it makes sense when considered in light of FIRREA's goal of promoting the quick and efficient resolution of claims against a failed bank. The statutory scheme relieves the FDIC of the administrative burdens of sorting out conflicting information about a claimant's address, putting the onus on the claimant to maintain an up-to-date mailing address on file with the bank and in claim documents.

Our reading of the clock-starting provision is reinforced by contrasting § 1821(d)(6)(A)—the 60-day limitations period for further agency or judicial review of disallowed claims—with § 1821(d)(5)(C), which sets forth the consequences for a

claimant's failure to submit a claim to the FDIC by its deadline. FIRREA gives the FDIC the authority to establish a deadline by which a failed bank's creditors must submit claims to the FDIC. *See id.* § 1821(d)(3). The FDIC is required to publish notice of this deadline, and the deadline must be at least 90 days after the date of the notice's publication. *Id.* § 1821(d)(3)(B)(i). The FDIC must also mail a notice of the deadline "to any creditor shown on the institution's books" at one of two addresses. *Id.* § 1821(d)(3)(C). A claimant's failure to submit a claim by the deadline set by the FDIC means that the claim "shall be disallowed and such disallowance shall be final." *Id.* § 1821(d)(5)(C)(i). But the statute also contains an exception for claimants who do not actually receive the notice of the deadline in the mail and time remains to allow payment of the claim. *See id.* § 1821(d)(5)(C)(ii). In that situation the FDIC may still consider the claim. *See id.*

But Congress did not include a similar exception to the 60-day time limit for further administrative or judicial review under § 1821(d)(6)(A). We assume that the difference in treatment of the two deadlines was purposeful. *See Pac. Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 687–88 (2012) (recognizing that the inclusion of limiting language in one subsection but not another subsection usually yields the inference that the limitation does not apply to the latter subsection).

It's true that in one of our opinions we suggested in dicta that the 60-day limitations period begins when the claimant receives the notice of disallowance. In *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 192 (7th Cir. 1993), we said that "[a]

creditor must take action on a claim *either* within 60 days of receiving any notice of disallowance, *or* within 60 days after expiration of the 180-day period for consideration of the claim." At least one district court has relied on this language from *Capitol Leasing* to support a holding that the 60-day limitations period begins when the claimant receives the notice of disallowance, not when the FDIC mails it. *Laurenzano v. Crossland Sav. Bank, FSB*, 837 F. Supp. 514, 516 (E.D.N.Y. 1993).

But our opinion in *Capitol Leasing* did not squarely address the issue, and the statement we have quoted was not relevant to the holding in the case. In *Capitol Leasing* the FDIC had mailed the notice of disallowance on "[t]he 180th day after [the claimant] filed its claim." 999 F.2d at 190. This meant that the 60-day limitations period began running on that date regardless of whether the "date of [the] notice of disallowance" in § 1821(d)(6)(A)(ii) was understood to mean the date of mailing or the date of receipt of the notice. As a result, *Capitol Leasing* did not address the issue presented here. We note as well that the opinion's reference to *receipt* of the notice of disallowance as one of the triggers for starting the 60-day time clock was made without any analysis or discussion. It did not purport to be, nor was it, an authoritative interpretation of time limit in § 1821(d)(6)(A)(ii).

Accordingly, we hold that "the date of any notice of disallowance of such claim" as used in § 1821(d)(6)(A)(ii) refers to the date on which the FDIC mails a proper notice of disallowance to the claimant at one of the addresses listed in the statute. Notice is complete upon mailing and starts the 60-day time clock for seeking additional administrative or judicial

review. Actual receipt of the notice is immaterial. Here, the FDIC disallowed Miller's claims on May 18, 2010, and that same day mailed its notice of disallowance to the address Miller listed in Corus Bank's books, a permissible address for notice purposes under § 1821(d)(5)(A)(iii)(I). Because May 18 was the earlier of the two possible time-limit triggers (the other was June 15, the end of the 180-day period), the 60-day limitations period started running on that day. Miller's August 17 complaint was therefore untimely.

## B. The 60-Day Limitations Period in 12 U.S.C. § 1821(d)(6)(A) Is Jurisdictional

Miller also takes issue with the district court's determination that compliance with the 60-day limitations period in § 1821(d)(6)(A) is a jurisdictional prerequisite. He argues that the time limit is instead a conventional statute of limitations and as such is subject to equitable tolling. He also maintains that he is eligible for equitable tolling because he never received the notice of disallowance. The statute should be equitably tolled, he contends, until he learned of the disallowance of his claim.

As a general matter, limitations statutes setting deadlines for bringing suit in federal court are not jurisdictional. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 485 (7th Cir. 2012) ("[S]tatutes of limitations ordinarily are affirmative defenses rather than jurisdictional bars."). Whether a limitations period has the status of a jurisdictional prerequisite or a claim-processing rule determines whether it is subject to waiver, estoppel, or equitable-

tolling doctrines. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Fogel v. Gordon & Glickson, P.C.*, 393 F.3d 727, 732 (7th Cir. 2004).

The Supreme Court has lately cautioned against too readily treating statutory preconditions to suit as jurisdictional requirements rather than nonjurisdictional claim-processing rules. *See, e.g., Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013); *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202–03 (2011); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243–44 (2010); *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 130 S. Ct. 584, 596 (2009); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510–16 (2006); *Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004). Claim-processing provisions establish "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 131 S. Ct. at 1203.

The Court's recent cases require a "clear statement" or "clear indication" from Congress before a statute prescribing a precondition to bringing suit will be construed as jurisdictional. *See id.; McReynolds*, 672 F.3d at 484. The most obvious example of a qualifying "clear statement" is when "the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh*, 546 U.S. at 515. This might be a statute that " 'speaks in jurisdictional terms or refers in [some] way to the jurisdiction of the district courts.' " *Id.* (quoting *Zipes*, 455 U.S. at 394). But "Congress, of course, need not use magic words in order to speak clearly on

this point." *Henderson*, 131 S. Ct. at 1203; *see also Auburn Reg'l*, 133 S. Ct. at 824 ("This is not to say that Congress must incant magic words in order to speak clearly."). Rather, the context of a rule may clearly indicate that it is jurisdictional. *See Auburn Reg'l*, 133 S. Ct. at 824; *Henderson*, 131 S. Ct. at 1203.

FIRREA contains a clear jurisdictional bar against suits seeking payment of claims against failed banks taken over by the FDIC:

> *Except as otherwise provided* in *this subsection*, no court shall have jurisdiction over—
>
> > (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> >
> > (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphases added). The "except as otherwise provided" language in the statute allows for exceptions to the general jurisdiction-blocking rule. One such exception is the provision at issue here, § 1821(d)(6)(A), which permits claimants to file suit for judicial review of claims disallowed by the FDIC. But the exception carries its own

limits, one of which is the 60-day limitations period for seeking review:

> Before the end of the 60-day period beginning on the earlier of—
>
>> (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
>>
>> (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),
>
> the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (*and such court shall have jurisdiction to hear such claim*).

*Id.* § 1821(d)(6)(A) (emphasis added). Note the use of jurisdictional language in the passage we have emphasized. The exception to the no-jurisdiction default rule confers jurisdiction on the district courts to review "such claims"—that is, claims that are filed within the 60-day period following the FDIC's

notice of disallowance of the claim or the expiration of the 180-day time period for the FDIC to act on the claim.

Both the language and structure of the statutory text clearly indicate that the 60-day limitations period is a jurisdictional prerequisite. The interplay between subsection (d)(13)(D), the general jurisdiction-stripping provision, and subsection (d)(6)(A), the specific provision conferring jurisdiction over certain claims, is clear enough: No court has jurisdiction to entertain actions asserting claims against failed banks unless a provision in subsection (d) expressly provides for it, and subsection (d)(6)(A) expressly confers federal jurisdiction over claims disallowed by the FDIC (or not acted on within 180 days of their submission), but only when the claimant files suit within the 60-day limitations period. By operation of the general jurisdictional bar and the carefully delimited language of the exception, subsection (d)(6)(A)'s 60-day time limit has jurisdictional effect.

We acknowledge that the very next subsection of the statute is titled "[s]tatute of limitations," *see id*. § 1821(d)(6)(B), and it generally provides that the failure to seek administrative review or file suit within the 60-day limitations period set forth in § 1821(d)(6)(A) means that "the claim shall be deemed to be disallowed … as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." *Id.* Titles to statutes may be helpful as interpretive tools to resolve ambiguities in the statutory text, but they cannot undermine otherwise clear statutory meaning. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998). And as we have explained, the 60-day time limit

established in § 1821(d)(6)(A) is clearly stated in jurisdictional terms.

That Congress would treat the time limit as jurisdictional serves FIRREA's general purpose of promoting the speedy and efficient resolution of claims against failed banks. The receivership estate offers a limited fund for payment of claims. A conventional nonjurisdictional limitations period would be subject to equitable doctrines such as tolling, with the attendant risk of protracted litigation, which consumes resources, delays finality, and otherwise threatens to impede the expeditious resolution of the receivership.

Our holding today that the 60-day time limit in § 1821(d)(6)(A) is jurisdictional should come as no surprise; we have said or assumed as much in earlier opinions, albeit with little or no discussion. *See Maher v. FDIC*, 441 F.3d 522, 525 (7th Cir. 2006); *Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1190 (7th Cir. 1996); *Capitol Leasing*, 999 F.2d at 192–93.[3] Our recent opinion in *Campbell v. FDIC*, 676 F.3d 615 (7th Cir. 2012), is not

---

[3] Admittedly our discussion in *Capitol Leasing Co. v. FDIC*, 999 F.2d 188 (7th Cir. 1993), is not a model of clarity on this issue. There the district court dismissed the action for lack of jurisdiction due to the plaintiff's failure to file a timely claim under 12 U.S.C. § 1821(d)(6)(A). *Capitol Leasing Co.*, 999 F.2d at 190. Yet, when addressing the issue, we repeatedly described § 1821(d)(6)(A)'s limitations period as a statute of limitations. *See id.* at 190–93. We even described why tolling did not apply, which suggested that under other facts it might. *See id.* at 193. But then when affirming the district court, we stated that it "had no jurisdiction over [the] untimely claim and properly dismissed [the] suit pursuant to Rule 12(b)(1)." *Id.* Despite the ambiguity of this opinion, we since have referred unambiguously to the limitations period as jurisdictional. *See Maher*, 441 F.3d at 525.

to the contrary. We said there that "[w]hile in the past we have referred to '[c]ompliance with the FIRREA process [as] a strict jurisdictional prerequisite,' it is our belief that in light of the Supreme Court's more recent decisions, the proper characterization of FIRREA's rules for claims submission [is] as claims processing rules." *Campbell*, 676 F.3d at 618 (first and second alterations in original) (citations omitted) (quoting *Maher*, 75 F.3d at 1190). For that proposition we favorably cited the Second Circuit's decision in *Carlyle Towers Condominium Ass'n v. FDIC*, 170 F.3d 301 (2d Cir. 1999).

But neither *Campbell* nor *Carlyle Towers* addressed the 60-day time limit in § 1821(d)(6)(A) for seeking additional administrative or judicial review of disallowed claims. Instead, both cases involved the FDIC's receivership-specific deadline for submitting claims to the agency, and the opinions addressed whether the failure to timely file deprived the district court of jurisdiction to entertain complaints seeking judicial review of the disallowed claims. The statutory provision at issue in *Campbell* and *Carlyle Towers* states simply that claims submitted after the deadline established by the FDIC "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). Unlike § 1821(d)(6)(A), it does not speak in jurisdictional terms. The Second Circuit explicitly recognized as much. *Carlyle Towers*, 170 F.3d at 307–08 ("Although the FIRREA makes exhaustion a jurisdictional requirement, it does not necessarily follow that compliance with time limits imposed by the FDIC have the same force. … This provision contains no reference to jurisdiction, nor to the consequences of a failure to file within the time limits established by the FDIC.").

So our language in *Campbell* must be understood in its context. When we announced that "the proper characterization of FIRREA's rules for claims submission [is] as claims processing rules," *Campbell*, 676 F.3d at 618, we were referring to the rules for submitting claims *to the FDIC* and the consequences for missing its deadline. Thus, *Campbell* does not conflict with our conclusion that FIRREA's time limit for seeking additional administrative or judicial review of disallowed claims is jurisdictional.

### III. Conclusion

For the foregoing reasons, we conclude that § 1821(d)(6)(A)'s 60-day time limit for seeking further administrative or judicial review of disallowed claims is jurisdictional. As applicable here, the time period began to run on May 18, 2010, when the FDIC mailed its notice of disallowance to the address Miller maintained at Corus Bank. Because Miller filed this action after the 60-day time period elapsed, the district court correctly dismissed the case for lack of subject-matter jurisdiction.[4]

AFFIRMED.

---

[4] Because we determine that Miller's failure to file his action within the 60-day limitations period deprived the district court of subject-matter jurisdiction from the outset, we need not determine whether the FDIC's subsequent no-value determination mooted the case.